[No. 25086. Department One. August 10, 1934.]

ADELAIDE SHORT *et al., Appellants,* v. W. F. DOLLING *et al., Respondents.*[1]

[1]Reported in 35 P. (2d) 82.

*W. G. Coleman,* for appellants.

*Frank B. Sharpstein,* for respondents.

STEINERT, J.—This is an action for breach of an oral contract to execute and deliver a mortgage upon real estate. The complaint seeks a judgment for damages for the breach and to have such judgment secured by a decree of specific performance of the contract; the prayer of the complaint also asks for such other and further relief as may be deemed equitable and requisite in the premises. From a judgment dismissing the action with prejudice, this appeal was taken.

The appellants herein and the respondent Amy E. Dolling are sisters. This litigation arises out of certain transactions heretofore had between them.

In August, 1923, respondents executed and delivered their promissory note in the sum of ninety-five hundred dollars to Martha E. Short, a widow and mother of Mrs. Dolling and these appellants. The note was secured by a mortgage on 121.9 acres of land owned by respondents and located in Walla Walla county. The note and mortgage were subsequently assigned by the mother to the appellants and a fourth daughter, Susan Short, to secure an amount owing by the mother and representing the interest of the three daughters in the estate of their father, who had died in 1917. The record does not disclose when respondents' note was to mature, but at any rate it had not been paid at the time that the transactions hereinafter narrated took place.

In December, 1930, the appellants and their sister Susan resided in Seattle; the respondents and Martha E. Short, the mother, were living together near Lowden, in Walla Walla county. About this time, a situation arose which made it advisable, and seemingly urgent, to raise sufficient money to pay Susan, and

possibly Adelaide also, the amounts that were owing them by their mother. In order to do this, however, it was apparently necessary to make some shift or change with reference to the mortgage which respondents had given Martha E. Short, and which, in turn, had been assigned by her to the three daughters above designated. With this in view, the mother and her four daughters entered upon negotiations with each other, at first by correspondence and finally in a conference held in Seattle. At that conference, an agreement was made, but what the exact agreement was, is in dispute and forms the basis of this controversy.

Appellants contend, and their contention is supported by their evidence, that the agreement was that Adelaide, Emma and Susan were to execute a release of the mortgage then existing on respondents' land, and that respondents, in turn, were to obtain from some third party a loan sufficient to pay Susan the amount owing her, namely, fifteen hundred dollars, the loan to be secured by a new and first mortgage on respondents' land; that respondents were also, and at the same time, to execute a second mortgage upon the same land, in the sum of three thousand dollars, in favor of Adelaide and Emma, to secure the amount still owing to them by their mother. It is obvious that, if such was the agreement, its purpose was to effect and place a mortgage for an amount sufficient to pay Susan, ahead of the security held by Adelaide and Emma.

On the other hand, respondents contend, and their evidence was to the effect, that, under the agreement as actually made, the existing mortgage was to be released by Adelaide, Emma and Susan, and in its place another mortgage was to be given by the mother on land owned by her. Just why respondents should be

released from the mortgage on their land, under such arrangement, is not entirely clear from the record.

It does appear, however, that, subsequent to the agreement, whatever it was, respondents were continually endeavoring to place a new mortgage on their land, but owing to the general financial condition then obtaining, they were unable to do so until February 10, 1932. On that day, they procured from Mrs. Ruth Periman a loan of two thousand dollars upon a first mortgage, at which time the release obtained from appellants in December, 1930, was placed of record. It also appears that the ninety-five hundred dollar note was ultimately delivered to Mr. Dolling by the bank which then held it, probably as security for another loan. From the proceeds of the Periman loan, Susan was paid fifteen hundred dollars.

It further appears that thereafter, in April, 1932, Martha E. Short, the mother, executed her note in the sum of three thousand dollars, payable to Adelaide and Emma, the note being secured by a mortgage on real estate owned by the mother. This note and mortgage were delivered to Adelaide, who was then living in Walla Walla county; the mortgage, however, was never recorded. The effect of this last mentioned mortgage upon the previous agreement between the parties will be dealt with later.

The court rendered a memorandum opinion reciting that

" . . . upon the pleadings, the evidence, and under the law, the plaintiffs [appellants] have not shown themselves to be, and are not, entitled to any decree or judgment."

The judgment is a formal dismissal of the action, without any findings made by the court. We are, therefore, unable to tell whether the court adopted respondents' version of the agreement rather than that of ap-

pellants, or whether the court thought that there was some legal obstacle to the granting of the relief sought by appellants, even if their version of the agreement were accepted. We will, therefore, consider both phases of the matter, in so far as they are covered by the briefs.

█ Upon the factual side of the controversy, we would be loath to disturb the judgment if we were relegated entirely to the testimony of the witnesses, because the question of credibility would be an important element to be considered. But we have in the record before us certain letters, over the signature of Mrs. Dolling, which convince us that the agreement must have been as appellants contend.

On January 25, 1932, before the two thousand dollar loan had been obtained and while the release from appellants was being withheld from record, Mrs. Dolling wrote to her sisters Emma and Susan in Seattle as follows:

". . . We are to see Paxton Friday about the loan so if Emma is willing to risk her interest here in a loan let us know by Thursday or Friday. It isn't a case of just what is due you girls just now but what we or Ma can pay—she is trying to keep her payments up to the F. L. B. so she will have something to leave the children . . .

"We are willing to make new mortgages to you girls but they will be drawn so that it protects us as well as you girls, so that so long as we pay our interest you cannot foreclose on us and give us a reasonable length to pay the principal. . . ."

On February 11, 1932, the day following the procurement of the loan, Mrs. Dolling wrote to her sister Emma as follows:

". . . My loan was legally finished yesterday so Susan's interest stops Feb. 10. Since she insists on dealing with me I shall not send her her principal and interest until I receive her note Mother gave her for

$1500 in 1922 and no new mortgage will be sent to you until you send me your note from Mother and also the note of Addies . . .

"Now then I'll make myself clear to you girls. Your releases to Mother for your fifteen hundred dollars have been recorded and released and also the release of my mortgage to Mother was recorded yesterday and today the new mortgage goes on record and no papers or mortgage will be made to you and no money paid Susan until you comply with my request about the notes and my rings. So for your own protection and if Susan wants her money get my rings to me by Monday. I've been fair and honest with you girls and did not record your releases until necessary to finish my loan as I had told you a year ago in December while in Seattle that I would see that your interests were taken care of. Your mortgage was in effect until I recorded it this week. It was not recorded before because we could not borrow any money on the place to pay any of you. To clear my title and pay the commission to secure the loan has cost Will [W. F. Dolling] and I a hundred dollars besides having to pay the last half of the 1930 taxes and we needed that money worse than we needed the taxes paid, but they had to be paid to get a loan. . . ."

On February 25, 1932, Mrs. Dolling wrote to her sister Emma as follows:

". . . I don't have to pay Susan 7% interest on her money as Mother made the 6% adjustment with Jim, Edmond and I three years ago but I told Susan two years ago that if we took over her interest we would pay her 7% so long as she was ill or until we could pay her. Since Susan wrote to me as she has I don't consider that I am under any obligation to pay her the 7% except that I prefer to keep my word to her.

"Emma, you haven't nagged me about your money and I'm sorry to have to reduce your interest but I just can't pay more and get it off this place so if you aren't willing to accept 6% and a new mortgage and note to be held and not recorded, so that if we can't pay off the present loan we have just put on the place, we can

make arrangements to borrow money to pay it. We have more in this place than you have to lose so knowing how hard it is and how long it would take to get release from you I am not taking the chance again. Your mortgage will be held here and in case of either my death or Will's it will be recorded for you and come against our estate so that it will have to be paid. . . ."

At the time that these letters were written to Emma and Susan, appellant Adelaide Short seems to have been living in Walla Walla county. While there, she procured from her mother the note and mortgage of three thousand dollars, dated April 25, 1932, and referred to above. We consider this note and mortgage wholly immaterial to the issues here. At best, it was simply additional security given by the mother, and did not relieve respondents of their obligation to appellants.

If the agreement between the parties was as respondents contend, there would have been no necessity for Mrs. Dolling to write to any of the appellants at all, since it would have been a matter wholly between the appellants and their mother. But she did write, and the contents of her letters are, in our opinion, not only corroborative of the appellants' contention, but utterly inconsistent with the contention of respondents. The tone of Mrs. Dolling's letters indicates that, after she had procured the release from appellants, she decided to dictate her own terms to them. Upon the factual side of the controversy, we must hold that appellants established the oral contract as they alleged.

Respondents present two legal questions, which we next consider.

It is first contended that the appellants may not have specific performance of the contract, because it is not shown either in the pleadings or by the evidence what its terms were. It is true that the length of time for

which the new mortgage to appellants was to run does not appear to have been fixed, so far as anything in the record shows. Nor does the ninety-five hundred dollar mortgage appear in the record, and there was no evidence concerning its terms. Hence, we have no light from that direction. Appellants, however, say in their brief that they are not gravely concerned about a new mortgage, or its terms, because they deem themselves entitled to a judgment for three thousand dollars. We will, therefore, not discuss this point any further, but will assume that appellants are not entitled to specific performance.

Respondents next contend that, inasmuch as the property to be mortgaged was community property, the contract can not be enforced by specific performance, because the respondent husband never agreed to the arrangement. In so far as specific performance by the husband is concerned, we pass the question for the reason already assigned, and retain only the question whether the husband and the community, as well as the wife, are liable to appellants for damages.

It must now be apparent, from what has already been stated, that appellants have lost a valuable security, namely, a ninety-five hundred dollar note secured by a mortgage upon 121.9 acres of land. The security thus lost was the obligation of each of the respondents, and of the community as well. It must also be apparent that respondents have benefited and profited at least to the extent of appellants' loss. There can hardly be any question that the security would have been ample to protect appellants on the indebtedness owing them by their mother. Had appellants taken steps to bring suit upon the note and mortgage, as they ultimately might have, any judgment recovered thereon would, of course, have been collectible to the same extent as any judgment that ap-

pellants may recover in this action. Appellants have surrendered their security to respondents, and have received nothing in return. We are, therefore, of the opinion that appellants have been damaged in the sum of three thousand dollars, and are entitled to judgment in that amount.

Mrs. Dolling is liable to such judgment because it was she that made the contract under which the release was given by the appellants. The husband and the community are liable for an equally valid reason. Counsel for respondents states in his brief that it is inconceivable that Mrs. Dolling and her mother would not have told Mr. Dolling of their agreement with appellants if, in fact, there was an agreement such as appellants assert. Holding, as we do, that there was such agreement, we readily concur with counsel's statement, although the conclusion that we draw from the premise is, obviously, just the contrary from that drawn by counsel. But we do not rest our conclusion solely upon this single inference. It will be remembered that more than a year elapsed between the time that the release from appellants was executed and the date of its recording. The record discloses that, during the time that the release was so held, Mr. Dolling knew of, and participated in, the arrangements under which the new mortgage was given, and from the proceeds of which Susan was paid. Under all the facts and circumstances of this case, as disclosed by the record, there can be no doubt, we think, that Mrs. Dolling was entrusted by Mr. Dolling to look after the matter of securing the release. Having entrusted her with authority, he may not accept the benefits of her contract without also incurring its obligations.

"When, therefore, the husband knowingly permits the wife to deal with the community property, his consent to her acts and all of her acts is implied, and he

cannot afterwards hold to those which redound to his benefit and repudiate those which are against his interest. He must accept the contract as an entirety, or repudiate it as an entirety, and in this instance he will not be permitted to say that his wife had authority to contract for the land, but did not have authority to settle and relinquish any right acquired thereunder." *Bowers v. Good,* 52 Wash. 384, 100 Pac. 848.

The community is liable for the same reason.

"This court has held the community estopped to deny liability, however, on obligations incurred by the wife when there has been an express or implied ratification of the contract by the husband. *Williams v. Beebe,* 79 Wash. 133, 139 Pac. 867; *Fielding v. Ketler,* 86 Wash. 194, 149 Pac. 667." *Streck v. Taylor,* 173 Wash. 367, 23 P. (2d) 415.

In addition to this, Mr. Dolling was advised, by the commencement of this very action, of the contract that his wife had made, and of course he knew that he and the community were benefiting by such contract. Although he was present at the trial, neither he nor Mrs. Dolling ever contended that he was not fully conversant with the details of whatever agreement was made between Mrs. Dolling and appellants. In fact, Mr. Dolling did not testify at all. In the face of the demand made by appellants, he has not done anything to recompense them, but has retained all the benefits that he had originally acquired. Under such circumstances, he and the community are estopped to deny the contract as made by his wife, and must be held liable to the same extent that she is. Since specific performance is resisted and may not be had, appellants' proper remedy is a judgment for the damages occasioned by respondents.

The judgment of the lower court is reversed, with direction to the court to enter in its place a judgment

in favor of appellants against respondents in the sum of three thousand dollars.

BEALS, C. J., MAIN, MITCHELL, and TOLMAN, JJ., concur.

