[No. 27325. Department Two. March 14, 1939.]

C. Van Geest *et al., Appellants,* v. Mamie Stocks *et al.,*
*Respondents.*[1]

*Josiah Thomas,* for appellants.

*Ballinger, Hutson & Boldt,* for respondents.

Beals, J.—C. Van Geest and Doris Van Geest, his
wife, instituted this action against Mamie Stocks and
W. B. Severyns, as sheriff of King county, for the pur-
pose of procuring an injunction restraining defendants
from proceeding with the sale of a parcel of real estate
in King county, pursuant to execution issued on a
judgment in favor of defendant Mamie Stocks, as plain-
tiff, and against plaintiff C. Van Geest and one Alfred

[1]Reported in 88 P. (2d) 406.

R. Ogden, as defendants. Plaintiffs also prayed that their title to the real estate be quieted as against Mrs. Stocks' judgment. They also demanded judgment for five hundred dollars and costs. Plaintiffs alleged that Mrs. Stocks' judgment against plaintiff C. Van Geest was based upon Mr. Van Geest's separate obligation; that the parcel of land, the title to which plaintiffs in this action sought to quiet as against Mrs. Stocks' judgment, was the community property of plaintiffs; that the judgment was not a lien thereon; and that the property was not liable to execution and sale under the judgment.

Defendant Stocks answered, denying that the judgment constituted an individual or separate indebtedness of C. Van Geest, and by way of an affirmative defense pleaded facts which will be later referred to, which defendant contended rendered her judgment a lien upon plaintiffs' property. Plaintiffs moved to strike several paragraphs from this affirmative defense, and also demurred thereto, upon the ground that no facts were pleaded which constituted a defense to plaintiffs' complaint. After argument, the court denied plaintiffs' motion to strike, and overruled their demurrer.

Plaintiffs then replied to the affirmative defense with denials, and filed a supplemental complaint, alleging that, subsequent to the institution of the action, a judgment was entered by the superior court for King county in the case of C. Van Geest, plaintiff, v. Alfred R. Ogden, defendant, in which it was decreed that Mr. and Mrs. Van Geest, as a marital community, held the real property described in their complaint in this action, in trust for one Alfred R. Ogden, a copy of the judgment being attached to the supplemental complaint.

This action, being equitable in its nature, was tried

to the court sitting without a jury, and resulted in lengthy findings of fact and conclusions of law in favor of defendants, followed by a decree dismissing the action with prejudice and adjudging that Mamie Stocks was entitled to levy execution upon the real estate described in plaintiff's complaint and proceed with the sale of that property, the proceeds to be applied upon her judgment against plaintiff C. Van Geest. Plaintiffs' motion for a new trial having been overruled, plaintiffs have appealed from the decree dismissing their action.

In this opinion, respondent Mamie Stocks will be referred to as though she were the sole party defendant to the action.

Error is assigned upon the court's order overruling appellants' motion to strike from respondent's answer the affirmative defense therein pleaded, and upon the order overruling appellants' demurrer to this affirmative defense. Error is also assigned upon the admission of testimony offered by respondent in support of her affirmative defense. Appellants assign no error upon the making of any finding of fact, but complain of three conclusions of law, and assign error upon the denial of their motion for a new trial and upon the entry of the decree in respondent's favor.

As asserted by appellants, their assignments of error present only questions of law, which appellants state as follows:

"Can a writ of execution issued upon a judgment obtained after marriage, against a husband for an indebtedness incurred by him prior to marriage, be levied upon community property, upon the ground that false representations have been made to and facts concealed from the judgment creditor by the husband after his marriage, and before judgment, in connection with transactions which had their origin prior to

marriage, but not involved in the cause of action merged in said judgment?"

"In making false representations to and concealing facts from his creditor, subsequent to marriage, concerning transactions which had their origin prior to marriage, was the husband acting for the marital community, and did the marital community profit thereby?"

The findings of the trial court, which are amply supported by the evidence, may be summarized as follows: Respondent Mamie Stocks is an elderly woman, unacquainted with business and incapable of managing her own affairs successfully. She was on terms of close friendship with appellant C. Van Geest, who knew of her inexperience and became her friend and confidential adviser. Mr. Van Geest knew that respondent had little property and was under the necessity of conserving her assets.

August 1, 1931, Alfred R. Ogden executed and delivered to C. Van Geest his promissory note for the sum of one thousand dollars, payable three years after date, and, to secure this note, executed and delivered to Van Geest a mortgage upon a 160-acre wheat farm in Spokane county. August 15, 1931, Van Geest endorsed the Ogden note in blank, and sold and assigned the note and the mortgage securing the same to respondent, who ever since has been the owner thereof. Van Geest then represented to respondent that the mortgage was a first lien upon the property covered thereby and was a desirable investment. The mortgage, however, was not a first lien upon the property, but was junior to a mortgage securing the sum of $450, with interest.

Van Geest became aware of the existence of the prior mortgage either shortly before or shortly after the assignment of the second mortgage to respondent, and he thereafter paid to respondent interest which

accrued upon the note which he had assigned to respondent, without disclosing to her that he was making such payments with his own funds and not from funds belonging to the maker of the note. When the property became vacant, Van Geest arranged for the leasing thereof, and paid taxes on the property from his own funds.

The first mortgage remaining unpaid, during the month of November, 1935, suit was instituted in Spokane county for the purpose of foreclosing the same, in which action respondent was named as a defendant. This foreclosure action was instituted at the request and expense of Van Geest, but without notice to respondent, and Van Geest caused the sheriff of King county to make a pretended service of process upon respondent by serving the summons upon Van Geest at his place of abode, he representing that respondent was related to him and was a member of his household, residing at the place of service, which representations were untrue.

Van Geest did not inform respondent of the pretended service of process upon her until January 17, 1936, nearly two months after the service was attempted to be made, at which time he left with respondent a copy of the summons and complaint in the foreclosure action, not for the purpose of serving the same upon her, but simply for her information, telling her that the suit was a friendly proceeding, intended for her protection. Within the time for appearance after the receipt by her of the summons, respondent attempted to enter her appearance in the foreclosure action, but thereupon learned that a decree had already been entered, based upon the pretended service upon her, hereinabove referred to.

Van Geest, in fact, had caused the foreclosure action to be instituted for the purpose of enabling him to

purchase the Spokane county property at foreclosure sale, he having previously made arrangements to exchange that property, when he should acquire title thereto, for property in King county (being the property referred to in appellants' complaint herein), Van Geest frequently assuring respondent that, by taking title to the Spokane property in his name, he would be in a position to protect her, and that he would protect her interests. He also requested respondent not to intervene in the foreclosure action, and asked that she bring an action against Alfred R. Ogden upon the note which respondent owned, and secure judgment against Ogden, without taking steps to foreclose her second mortgage on the Spokane county property; and orally agreed with respondent that, if she would refrain from appearing in the Spokane county foreclosure and thereby facilitate his acquisition of title to the Spokane county land, so that he might exchange that land for the Seattle property, he (Van Geest) would pay to respondent the amount due her on the Ogden note, upon which Van Geest was also liable.

Respondent relied upon Van Geest's promises, and entered no appearance in the Spokane county foreclosure, but, on the other hand, instituted an action before the superior court for King county, wherein judgment was rendered in her favor, and against Ogden and Van Geest, on the promissory note owned by respondent and above referred to.

Upon the entry of judgment in the Spokane county foreclosure, Van Geest caused a third party to bid in the property upon which the mortgage was a lien, and later took an assignment in his own name of the certificate of purchase issued by the sheriff. Upon the expiration of the period of redemption from the mortgage, a sheriff's deed was issued, conveying the land to Van Geest, and thereafter the exchange agreement

above referred to was carried out, and Van Geest exchanged the Spokane county property for the lot in Seattle, which was conveyed to appellant C. Van Geest, as grantee.

Respondent, upon the entry of judgment in her favor against Ogden and Van Geest in the action which respondent had brought in King county, requested Van Geest to make payment in accordance with his promises, but Van Geest urged respondent to proceed against certain land in King county, formerly owned by Ogden, which Ogden had theretofore conveyed to his daughter, who had conveyed the land to a third party, Van Geest representing to respondent that these transfers were colorable and fraudulent, and that the property could be subjected to the lien of respondent's judgment, Van Geest still promising that, if the amount due on the judgment could not be collected from Ogden, he (Van Geest) would pay to respondent the amount of the judgment. Van Geest further promised that he would pay all expenses in connection with the prosecution of the action which he desired respondent to institute against Ogden and his successors in interest, and would cooperate with respondent in the prosecution of the suit. Relying upon Van Geest's promises, respondent did commence such an action, but Van Geest failed to produce any evidence which would support the complaint which he had persuaded respondent to sign, and respondent therefore caused her action to be dismissed.

Appellants Van Geest intermarried October 8, 1932, and they ever since have been, and now are, husband and wife, and all promises made by appellant C. Van Geest, whereby he promised to pay respondent the amount which he owed her, and all representations and concealments made by him after his marriage, were made in an attempt to vest in the community of

appellants, as husband and wife, title to the King county property, free and clear from any claim on the part of respondent, and free from the lien of any judgment which respondent might procure upon the Ogden note, upon which appellant C. Van Geest was also liable.

As above stated, the findings of the court, containing the foregoing, and many other, facts, are not challenged here.

As appellant C. Van Geest assigned the Ogden note and mortgage to respondent August 15, 1931, and was not married to his co-appellant, Doris Van Geest, until October, 1932, the obligation to respondent was the separate debt of Mr. Van Geest. The basic question to be determined, then, is whether or not the court erred in holding that the real estate in King county, now owned by appellants as their community property, is subject to execution on respondent's judgment, which was based upon a debt which was originally the separate obligation of appellant husband. The money which appellants used in buying the certificate of purchase covering the Spokane property was undoubtedly community money. Mr. Van Geest had little or no property at the time of his marriage.

It appears from the evidence that Mr. Van Geest, at the time of the original transaction between him and respondent, or shortly thereafter, owned a note for $1,300, signed by Messrs. Phillips and Newell, which note was secured by a mortgage. This note and mortgage Van Geest assigned to respondent as additional security for the Ogden note, which he had endorsed.

The evidence clearly shows that respondent relied absolutely upon Van Geest for advice concerning some of her business affairs, and that she trusted him im-

plicitly. He called her Aunt Mamie, and professed for her the greatest affection.

Shortly after his marriage, Van Geest requested respondent to deliver to him the Phillips and Newell note and mortgage, giving her therefor a receipt, as follows:

"11/18/32 Received from M. Stocks collatorall morgage & note of Phillips & Newell—as a loan in order to make a copy and to be returned to Mrs. F. Stocks without charge.     (Sd.)     C. Van Geest"

Instead of returning these documents to respondent, he satisfied the mortgage, receiving, as he testified, "I think a couple of hundred dollars," which he appropriated to the use of the community of appellants as husband and wife. He gives no satisfactory explanation of his conduct in connection with this matter, and evidently grossly imposed upon respondent.

Van Geest's testimony is unsatisfactory in many particulars. He stated positively that he had not instigated the foreclosure of the first mortgage against the Spokane land, and that this suit was started against his objection, stating, "I objected to it and fought it tooth and nail." There is, however, in the record a letter, written by Van Geest, April 10, 1936, to respondent's attorneys, in which is found the following:

"You of course must understand first that the entire foreclosure proceedings were brought at my request, because prior to that, Mr. Leggett offered me an assignment of his first mortgage—But for several reasons we agreed that a better and clearer title to this property could be had by foreclosure, and I agreed to have it handled that way, even at a good deal of expense."

After considerable evasion, the witness tried to explain the contradiction between his testimony and the letter, by testifying that the latter was "a little exaggerated;" that it was not entirely true; and "Well, I had good intentions with the thing;" finally stating, re-

ferring to the letter, "It is not true." Van Geest's testimony is unsatisfactory and contains many evasions and attempted suppressions of material facts.

The deputy sheriff who attempted to serve respondent with process in the Spokane foreclosure testified that he served the summons on Mr. Van Geest personally and for his wife, and upon respondent by leaving a copy for her with Mr. Van Geest. He stated that Van Geest stated to him that respondent was his aunt, and lived at the Van Geest home. There is no reason to doubt the truth of the testimony given by this witness, and Van Geest's statements to the witness were manifestly false.

Clearly, Van Geest withheld from respondent knowledge of the Spokane foreclosure against the property upon which respondent held a second mortgage, until the time for her appearance in the action had passed. He made representations to respondent and to her counsel, to the effect that he was at all times protecting respondent, and would see to it that she received the money due her. By this course of conduct, the community composed of appellants as husband and wife received a deed to the Spokane county property, free and clear from respondent's mortgage thereon, and exchanged this land for the Seattle lot, which in this action they seek to have declared free from the lien of respondent's judgment. Mrs. Van Geest testified that she and her husband talked over the transactions which resulted in the exchange of properties, and that the matter was accomplished for the benefit of the community. It is, of course, evident that, by the transactions, the community profited greatly, as it also profited by the receipt of the money which Messrs. Phillips and Newell paid to Van Geest for the satisfaction of their note and mortgage, which he owned.

It is true, as argued by appellants, that respond-

ent's claim against Van Geest arose before his marriage to appellant Doris Van Geest, and was his separate, and not a community, debt. It is also true that a judgment rendered against a married man is presumed to be a community obligation. *Woste v. Rugge,* 68 Wash. 90, 122 Pac. 988; *Merritt v. Newkirk,* 155 Wash. 517, 285 Pac. 442; *Fitch v. National Bank of Commerce,* 184 Wash. 294, 50 P. (2d) 910.

When rendered, respondent's judgment against Van Geest was *prima facie* a lien on all of the property, whether separate or community, standing in Van Geest's name. It remained for the community to take some action by way of a suit to quiet title, or otherwise, to remove the apparent cloud from the title to community property, or, as they did, to remove the cloud and restrain the levy of execution on the property. Appellants have invoked the aid of a court of equity to protect what they conceive to be their community rights. Respondent, claiming a judgment lien upon the property which is the subject matter of this action, then, properly asserted her claim that appellants are estopped to claim that the land in question is not subject to the lien of respondent's judgment. The action in which respondent procured judgment against Messrs. Van Geest and Ogden was brought at the former's request, and in reliance upon his agreement to pay or purchase the judgment.

The judgment in the action which Van Geest brought against Ogden, referred to in appellants' supplemental complaint, has no bearing upon this case. By the terms of that judgment, it was decreed that the property here in question was owned by Ogden, but would become Van Geest's property if Ogden did not pay a certain amount by a date fixed. Respondent's judgment is against both Ogden and Van Geest, and the property is subject to execution under that judgment, whether it

is owned by either Ogden or Van Geest, or by Ogden subject to a lien in favor of Van Geest.

In many cases, this court has held that the community property is not liable for a debt which is merely the separate obligation of either spouse, but it has also held in many cases that a wrong committed, or an obligation incurred, by the husband in the course of the management of the affairs of the community, and apparently intended for the benefit of the community, may give rise to a debt which is a community obligation. *Oregon Imp. Co. v. Sagmeister*, 4 Wash. 710, 30 Pac. 1058, 19 L. R. A. 233; *McGregor v. Johnson*, 58 Wash. 78, 107 Pac. 1049, 27 L. R. A. (N. S) 1022; *Woste v. Rugge*, 68 Wash. 90, 122 Pac. 988; *McLean v. Burginger*, 100 Wash. 570, 171 Pac. 518; *Henning v. Anderson*, 121 Wash. 53, 207 Pac. 1048; *Meck v. Cavanaugh*, 147 Wash. 153, 265 Pac. 178; *Wimmer v. Nicholson*, 151 Wash. 199, 275 Pac. 699; *Bortle v. Osborne*, 155 Wash. 585, 285 Pac. 425, 67 A. L. R. 1152; *Short v. Dolling*, 178 Wash. 467, 35 P. (2d) 82.

Appellants cite several of our decisions in which it was held that a community was not liable for certain torts committed by the husband. These cases are not in point here, as the acts of the husbands in those cases were manifestly not intended for the benefit of the community, and resulted in no benefit thereto.

It clearly appears from the record in the case at bar that all the acts of appellant C. Van Geest in connection with the subject matter of this litigation, committed after his marriage to his co-appellant, were for the benefit of the community, and apparently were committed pursuant to a plan to enrich the community at the expense of respondent. If appellants may now hold the King county property free and clear from the lien of respondent's judgment, appellants, as a community, gain an unconscionable advantage over re-

spondent, as the result of many acts of deliberate wrongdoing by the husband, to respondent's disadvantage. Van Geest stood in a fiduciary relation to respondent, and endeavored to take advantage of this situation to gain property for the community, at respondent's expense. Such a course of conduct cannot be tolerated in a court of equity.

From the record, it appears that both respondent's judgment debtors, Van Geest and Ogden, are financially irresponsible. If the latter has property which may be levied upon, appellants may protect themselves by preserving the lien of the judgment as against Ogden, who is primarily liable upon the note for which the judgment was rendered. Respondent seeks no more than the return of her money. If the real estate owned by appellants is worth more than this amount, the way is open to appellants to preserve such equity for their own advantage. The trial court properly held that respondent may proceed to levy execution upon this property, and sell the same in satisfaction of her judgment, as provided by law.

The judgment appealed from is accordingly affirmed.

BLAKE, C. J., MILLARD, GERAGHTY, and SIMPSON, JJ., concur.