23 F.3d 408
 22 Media L. Rep. 1711
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
The SUAREZ CORPORATION, Plaintiff-Appellant,
v.
CBS, INC., Kiro, Inc., and Herb Weisbaum, Defendants-Appellees.
 No. 93-3307.
 United States Court of Appeals, Sixth Circuit.
 April 19, 1994.
 
 On Appeal from the United States District Court, for the Northern District of Ohio, No. 92-00045; Paul R. Matia, Judge.
 N.D.Ohio, 1993 WL 246171.
 AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
 BEFORE: KENNEDY and MILBURN, Circuit Judges; and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, the Suarez Corporation, appeals the District Court's order dismissing plaintiff's action for defamation and false light invasion of privacy for failure to state a claim. Plaintiff also appeals the District Court's order dismissing defendant KIRO, Inc. for lack of personal jurisdiction. For the reasons stated, we affirm in part and reverse and remand in part.
 
 I.
 
 2
 Herb Weisbaum ("Weisbaum") is a television and radio reporter for defendant KIRO, Inc. ("KIRO") and also reports on a free-lance basis for defendant CBS, Inc. ("CBS"). KIRO operates KIRO-TV, a television station in Seattle, Washington, which is affiliated with CBS. Plaintiff is an Ohio corporation which is engaged in direct marketing, offering merchandise to consumers through mailings, telemarketing and promotional broadcasts. During 1991, in his free-lance capacity, Weisbaum investigated national sweepstakes promotions conducted by Lindenwold Fine Jewelers.[1] During Weisbaum's investigation of the Suarez Corporation, he responded to one of the promotions and purchased jewelry by completing an order form and mailing it to plaintiff in Ohio. In July 1991, Weisbaum made telephone inquiries to plaintiff about the company's business practices and followed up with a letter which addressed a number of questions. The July letter carried both the KIRO logo and the CBS logo, connoting KIRO's affiliation with CBS.
 
 
 3
 On December 23, 1991, during one of its nationally televised broadcasts of "CBS This Morning," CBS aired a "consumer report" entitled "Gem Scams" which focused on sweepstakes offers mailed by plaintiff to potential customers nationwide. The report specifically focused on one of plaintiff's promotions in which it offered at no charge a cubic zirconia diamond simulant or synthetic royal ruby to consumers.[2] The "Gem Scams" report was aired by CBS and was aired by KIRO in the State of Washington as well as by countless CBS affiliates throughout the United States.
 
 
 4
 Plaintiff claims that this report contained false statements with regard to the availability of free prizes from the company, the manner in which free prizes must be obtained from plaintiff, statements that plaintiff's promotions are phony and other than legitimate direct marketing endeavors and finally that the company would not appear on camera to respond to these statements. Plaintiff thus brought this diversity action against CBS, KIRO, and Herb Weisbaum for defamation of character and false light invasion of privacy. CBS and Weisbaum moved to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted or in the alternative for summary judgment. At the same time, KIRO filed its own motion to dismiss alleging lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) and failure to state a claim under Fed.R.Civ.P. 12(b)(6). After the District Court conducted the case management conference, CBS and Weisbaum withdrew their motion to dismiss/motion for summary judgment and with the District Court's approval filed a revised motion to dismiss based on Fed.R.Civ.P. 12(b)(6). Subsequently, KIRO filed a supplemental memorandum incorporating the CBS/Weisbaum revised motion to dismiss.[3]
 
 
 5
 The District Court initially dismissed KIRO for lack of personal jurisdiction. The District Court also dismissed plaintiff's false light invasion of privacy claim and its defamation claim for failure to state a claim upon which relief can be granted. This timely appeal followed.
 
 II.
 
 6
 Plaintiff initially argues on appeal that the District Court erred in dismissing KIRO for lack of personal jurisdiction. We review the District Court's conclusion of law regarding personal jurisdiction de novo and findings of fact for clear error.
 
 
 7
 "In determining whether it can assert personal jurisdiction over a nonresident defendant in a diversity case, a district court must apply the law of the state in which it sits, subject to due process limitations." Creech v. Roberts, 908 F.2d 75, 79 (6th Cir.1990), cert. denied, 499 U.S. 975 (1991).
 
 
 8
 In this case, the following Ohio long-arm statute applies:
 
 
 9
 (a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from a person's:
 
 
 10
 ....
 
 
 11
 (3) Causing tortious injury by an act or omission in this state;
 
 
 12
 ....
 
 
 13
 (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state; ...
 
 
 14
 Ohio Rev.Code Ann. Sec. 2307.382 (emphasis added).
 
 
 15
 In the case sub judice, the District Court concluded that it did not have personal jurisdiction over defendant KIRO under the Ohio long-arm statute. Specifically, the District Court stated:
 
 
 16
 Plaintiff asserts two bases for personal jurisdiction over KIRO, both premised on Weisbaum's alleged agency. First, Weisbaum's use of KIRO letterhead and the identification of himself as an employee of KIRO in a phone call to plaintiff during the course of researching plaintiff's business practices. However, the acts conferring jurisdiction must be tortious and must in and of themselves give rise to the defamation and false light claims asserted. Plaintiff has not alleged that the letter and phone call to plaintiff in Ohio were defamatory.
 
 
 17
 Second, plaintiff asserts that the announcer's introduction of Weisbaum as being "of KIRO-TV ... from Seattle" in the broadcast confers personal jurisdiction over KIRO. KIRO argues that apparent agency was not created as to it when Weisbaum was introduced as "of KIRO-TV." However, apparent agency does not apply in the case at bar which alleges a tort and not a breach of contract.
 
 
 18
 Joint App. at 251-52 (citations omitted).
 
 
 19
 It is well-settled that plaintiff bears the burden of establishing that jurisdiction exists. Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir.1991). Once the defendant has properly submitted his motion for dismissal, the plaintiff may not solely depend on its pleadings but must set forth specific facts illustrating the Court's jurisdiction over the defendant by affidavit or otherwise. Id.
 
 
 20
 On a 12(b)(2) motion, the District Court may "decide the motion upon affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." Id. The District Court has discretion to determine which method to follow and will only be reversed for abuse of discretion.
 
 
 21
 It is clear that the District Court in the case sub judice reached its decision based upon the affidavits of the parties. In the case management order, the parties agreed to allow discovery on jurisdictional issues, but plaintiff only submitted an affidavit of its general counsel to withstand the defendant's dismissal motion, which also contained several affidavits. In a 12(b)(2) motion, the pleadings and affidavits are viewed in the light most favorable to the plaintiff and the District Court may not weigh the controverting assertions of the party seeking dismissal. Serras v. First Tennessee Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir.1989).
 
 
 22
 When the District Court decides the personal jurisdiction issue on the basis of the underlying affidavits, as the District Court did here, the District Court must examine each of the plaintiff's factual allegations notwithstanding the defendant's contrary assertions. "Dismissal was only proper if all of the specific facts [plaintiff] alleged collectively failed to state a prima facie case for jurisdiction under the appropriate standards." Theunissen, 935 at 1459.
 
 
 23
 The essential jurisdictional facts are really not disputed. Rather, their significance is disputed. Thus, the District Court did not err by deciding the jurisdictional issue early in the case without the benefit of an evidentiary hearing. Considering the evidence in the light most favorable to the plaintiff, we conclude that plaintiff has not demonstrated facts supporting jurisdiction.
 
 
 24
 In its affidavit supporting its assertion of jurisdiction, plaintiff alleged that KIRO was subject to personal jurisdiction in Ohio by virtue of the acts performed by Weisbaum, its agent. Specifically, plaintiff argues that while Weisbaum was researching the report on plaintiff's corporation, he called one of plaintiff's officers in Ohio and identified himself as a reporter with KIRO. Additionally, he mailed a letter (on stationary with the CBS and KIRO logos) to plaintiff. Also, the letter requested that any response by Suarez be mailed to Weisbaum at KIRO's offices in Seattle or that Suarez call Weisbaum at KIRO's offices. Finally, plaintiff alleges that the broadcast announcer introduced Weisbaum as Herb Weisbaum "of KIRO-TV ... from Seattle." Thus, the issue is whether these acts are sufficient to establish the existence of apparent authority.
 
 
 25
 It is well-established that an agent's apparent authority can be inferred only from acts and conduct of the principal. Schoonover v. Carpet World, Inc., 588 P.2d 729 (Wash.1978).[4] Under Washington law,
 
 
 26
 apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.
 
 
 27
 Smith v. Hansen, Hansen & Johnson, Inc., 818 P.2d 1127, 1129 (Wash.Ct.App.1991) (citing Restatement (Second) of Agency Sec. 27). The Restatement summarizes some of the specific manifestations that may create apparent authority.
 
 
 28
 The information received by the third person may come directly from the principal by letter or word of mouth, from authorized statements of the agent, from documents or other indicia of authority given by the principal to the agent, or from third persons who have heard of the agent's authority through authorized or permitted channels of communication.
 
 
 29
 Id. (citing Restatement (Second) of Agency Sec. 27 cmt a).
 
 
 30
 Initially, plaintiff relies on the fact that the broadcast announcer introduced Weisbaum as Herb Weisbaum of "KIRO-TV ... from Seattle" when introducing the consumer report on plaintiff's promotions. Because a finding of apparent authority depends on acts by the principal, this representation by the CBS broadcaster is clearly insufficient to infer apparent authority to act on behalf of KIRO.
 
 
 31
 Next, plaintiff relies on Weisbaum's own representation on the telephone that he was a reporter with KIRO and the fact that Weisbaum mailed a letter to plaintiff on letterhead embossed with the KIRO logo and the CBS logo. A mere representation by Weisbaum personally that he was a reporter with KIRO is insufficient to infer apparent authority because plaintiff is not relying on an act of the principal. However, apparent authority may arise from documents or other indicia of authority given to the agent by the principal.
 
 
 32
 In this case, Weisbaum used a telephone at KIRO and letterhead bearing the KIRO logo. Plaintiff therefore argues that Weisbaum had apparent authority to act on behalf of KIRO. We believe that the mere use of a business telephone and letterhead is insufficient to create apparent authority. Simply by furnishing Weisbaum with a telephone and letterhead bearing the KIRO logo, KIRO did not clothe Weisbaum with the authority to investigate and report on this matter. Rather, furnishing Weisbaum with a telephone and access to letterhead simply showed that Weisbaum was an employee of KIRO. Cf. Smith v. Hansen, Hansen & Johnson, 818 P.2d 1127 (Wash.Ct.App.1991).
 
 
 33
 Plaintiff also argues that Weisbaum's acts can be imputed to KIRO because KIRO ratified Weisbaum's conduct. Plaintiff argues that KIRO ratified Weisbaum's conduct because it knew of the broadcast after the fact and failed to "distance itself from the 'Gem Scams' broadcast." Plaintiff's Brief at 30. Ratification is the "affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." Restatement (Second) of Agency Sec. 82.
 
 
 34
 A principal may ratify a tortious act and such an affirmance may arise by a failure to repudiate it. See Restatement (Second) of Agency Secs. 84, 94. However, we refuse to find a ratification from a failure to repudiate under these circumstances. While KIRO knew of the broadcast, it also knew that Weisbaum had prepared the report for CBS, not for KIRO. Thus, we decline to find a ratification by KIRO's refusal to repudiate. Cf. Nichols Hills Bank v. McCool, 701 P.2d 1114 (Wash.1985).
 
 
 35
 Because plaintiff's sole allegations supporting personal jurisdiction over KIRO are based on Weisbaum's alleged agency and we have concluded that Weisbaum's acts cannot be attributed to KIRO based on the facts alleged, there is clearly no basis for exercising personal jurisdiction over KIRO. Thus, we affirm the District Court's order dismissing KIRO for lack of personal jurisdiction.
 
 III.
 
 36
 Next, plaintiff argues that the District Court erred by dismissing its claim for defamation under Fed.R.Civ.P. 12(b)(6). Whether the District Court correctly dismissed a case pursuant to Fed.R.Civ.P. 12(b)(6) is a question of law subject to de novo review. Mertik v. Blalock, 983 F.2d 1353, 1356 (6th Cir.1993). We accept as true all factual allegations of the complaint. "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).
 
 
 37
 Defendants initially argue that plaintiff's defamation claim was inadequately pled as it fails to delineate the allegedly defamatory statements in the broadcast. While technical rules of pleading existed for defamation at common law, the liberalized requirements of the federal rules only require "notice" pleading. Under the Federal Rules, the pleader need only provide "a short and plain statement of the claim showing the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 113 S.Ct. 1160 (1993) (emphasizing the liberal notice requirements of the Federal Rules). Plaintiff's complaint specifically referred to the December 1991 broadcast and to the subject matter of the broadcast. This certainly gave notice to the court and to the parties of the nature of the action and the relief sought. Thus, plaintiff adequately pled its defamation claim.
 
 
 38
 Under Ohio law, "[d]efamation may be defined as a false publication causing injury to a person's reputation, or exposing him to public hatred, contempt, ridicule, shame or disgrace, or affecting him adversely in his trade or business." Matalka v. Lagemann, 21 Ohio App.3d 134, 486 N.E.2d 1220, 1222 (Ohio Ct.App.1985). In Ohio, the court decides as a matter of law "whether certain statements alleged to be defamatory are actionable or not." Yeager v. Local Union 20, 6 Ohio St.3d 369, 453 N.E.2d 666, 669 (Ohio 1983). The trial court must examine the statements under the totality of the circumstances. Scott v. News-Herald, 25 Ohio St.3d 243, 496 N.E.2d 699, 708 (Ohio 1986). Furthermore, the trial court must examine the defamatory statements in the context of the entire publication. Mendise v. Plain Dealer Publishing Co., 69 Ohio App.3d 721, 591 N.E.2d 789 (Ohio Ct.App.1990); Cf. Connaughton v. Harte Hanks Communications, Inc., 842 F.2d 825, 840 (6th Cir.1988) ("[T]he words of the publication should not be considered in isolation, but rather within the context of the entire article and the thoughts that the article through its structural implications and connotations is calculated to convey to the reader to whom it is addressed."), aff'd on other grounds, 491 U.S. 657 (1989).
 
 
 39
 The District Court decided that the conclusory allegations of plaintiff did not demonstrate any actionable defamatory statements in the broadcast. Because the District Court was concerned with the specificity of plaintiff's pleadings, the District Court focused on the "four vague and conclusory challenges to the Broadcast." Joint App. at 258. These four allegations were contained in paragraph 18 of plaintiff's complaint, it alleged that
 
 
 40
 the anchor of the CBS Morning News and an agent and employee of CBS, falsely stated, among other things, that the consuming public could not under all circumstances receive a free gem from the company notwithstanding Suarez's unequivocal offer of a free gem. The broadcast also included a false statement by Weisbaum that the consuming public must correspond multiple times with Suarez as a pre-condition to obtaining the benefits of the free gem offer. Moreover, both Magnus and Weisbaum falsely conveyed that the Suarez promotion was "phony" and other than a legitimate direct marketing endeavor. Defendants also untruthfully stated that the company would not appear on camera to respond to these incorrect, malicious and disparaging statements.
 
 
 41
 Joint App. at 12-13 (emphasis added).
 
 
 42
 The District Court then reviewed the broadcast with regard to each of the four allegations and concluded that the broadcast was not defamatory. However, we conclude that plaintiff's complaint does not merely refer to the four allegations in paragraph 18. Rather, plaintiff has aptly pled that the entire contents of the December 1991 broadcast defamed plaintiff's business. Indeed, paragraph 18 of plaintiff's complaint lists the four specific allegations but also indicates that these four allegations are among other allegations. Thus, we reverse and remand so the District Court may examine the entire broadcast to determine if it contained any defamatory statements in the context of the entire broadcast.
 
 IV.
 
 43
 The District Court also dismissed plaintiff's false light invasion of privacy claim, reasoning that the Ohio courts had not recognized the tort of false light invasion of privacy. Plaintiff argues that the District Court erred in applying Ohio law to this claim.[5] In fact plaintiff alleges that the District Court did not know the requisite facts required to conduct a choice of law analysis. Specifically, plaintiff contends that the District Court did not know where the broadcast was created or from where it emanated. Additionally, plaintiff argues that the District Court did not know where plaintiff conducted its principal business activity.
 
 
 44
 Plaintiff's complaint alleged that plaintiff was incorporated under Ohio law and its principal place of business was Ohio. See Joint App. at 7. Additionally, the complaint alleged that CBS was organized under the laws of New York with its principal place of business in New York; KIRO, Inc. was organized under Washington law with its principal place of business in the State of Washington; and that Herb Weisbaum was a resident of the State of Washington. While the complaint did not allege where the broadcast was created or from where it emanated, we conclude that the District Court knew sufficient facts to make a choice of law determination.
 
 
 45
 In a diversity case, a federal court must apply the conflict of laws rules that the forum state would apply. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). Thus, Ohio conflict of laws rules will normally determine which substantive state law should govern the rights of the parties. The Ohio Supreme Court has recently reaffirmed its decision to abandon a strict adherence to the traditional rule of lex loci delicti in favor of a more flexible approach based on which state has a more significant Relationship to the lawsuit in light of the factors in Restatement (Second) of Conflict of Laws Sec. 145 (1971).[6] Morgan v. Biro Mfg. Co., 15 Ohio St.3d 339, 474 N.E.2d 286 (Ohio 1984) (per curiam).
 
 
 46
 Under the Restatement approach, we conclude that the District Court properly applied Ohio law to the false light invasion of privacy issue. Under section 145 of the Restatement, Ohio's relationship to the lawsuit is the most significant. Plaintiff is incorporated in Ohio and Ohio is its principal place of business. See Joint App. at 7. Indeed, for actions involving multistate invasions of privacy, the state with the most significant relationship to the lawsuit will usually be the state where the corporation had its principal place of business.[7]
 
 
 47
 Additionally, the Ohio courts have refused to recognize the tort of false light invasion of privacy. See Yeager, 453 N.E.2d at 669-70. Thus, we affirm the District Court's order dismissing plaintiff's claim for false light invasion of privacy.
 
 V.
 
 48
 For the reasons stated, we AFFIRM in part and REVERSE and REMAND in part.
 
 
 
 [1]
 The Lindenwold name is a registered trademark of Suarez and is generally recognized by the consuming public as a name used by Suarez
 
 
 [2]
 The transcript of the report follows:
 Announcer: Congratulations. You've just won a great prize in a nationwide contest, or have you? These days more and more contests are really come-ons where everybody wins. Okay. What's the catch? Consumer reporter, Herb Weissbaum [sic], of KIRO-TV joins us from Seattle to explain. Good morning.
 Weisbaum: Good morning, Edye. If you're like me, your mailbox is overflowing with award notices. Impressive looking mailing like this telling me I've won a contest I've never entered. Now these mailings are all designed to do one thing, make you feel special to get you to buy something. (Opening paper). It sure seems official; you've just won a major prize in a national sweepstakes the mailing says. Sometimes the prize is a genuine one karat Lindenwald [sic] CZ Diamond. In others, it's a sparkling Lindenwald [sic] synthetic royal ruby. The stone is yours free unless you want to claim your major extra bonus, having your stone professionally mounted for a price of course.
 Carolyn DeMar: And this one kind of caught my eye and I thought well ...
 Weisbaum: When Carolyn DeMar got this mailing she just wanted her prize, for free. It took a couple of tries to get it.
 DeMar: Two letters. I had to send two letters to them and they finally sent me the stone and I had a friend of mind [sic], Ted, look at it and tell me that it was worth two dollars and fifty cents.
 Weisbaum: Ted knows what he's talking about. He's a certified gemologist. By the way, CZ means cubic zirconia. That's a synthetic stone, a fake diamond.
 Ted: The value of the stone is very minimal and basically you have a costume piece.
 Weisbaum: Lindelwald [sic] uses a similar mailing to sell settings for synthetic rubies. If you're not a careful reader, these prize claim forms could be confusing since they compare the value of your fake, which is practically worthless, to a real stone in a similar setting.
 Ted: Well that's like saying if you win the Lotto you'll be rich. The problem is I have a ... a small chance of winning the Lotto. This synthetic ruby has no chance of every [sic] becoming natural.
 Weisbaum: And be advised if you do what Carolyn DeMar did, ask for your prize without paying for a mounting, you can expect to get more mail.
 DeMar: I'm getting other letters saying that I've made the biggest mistake of my life if I don't send away $19.95 for the setting, for the stone.
 Are you going to do that?
 DeMar: No, I'm not going to do that; this is trash. It's all ... it's junk mail.
 Weisbaum: Guess what? I won a Lindenwald [sic] cubic zirconia too so I decided to order a mounting for it just to see what I'd get for nineteen ninety-five. Nothing special, Ted said, just a smidgen of gold over a piece of metal. The folks in Canton, Ohio don't only sell cheap jewelry this way. They also create contests to sell frames for cheap art work. Vic Daly's award notice told him he had won a major prize in a national sweepstakes.... Vic had won a genuine reproduction, a copy of Sirra Sunrise. The original oil painting, it says, [is] presently valued at forty-five hundred dollars. To insure safe delivery, the letter said, your prize print can be framed at a special price. Vic chose the standard frame for nineteen dollars.
 Vic Daly: Well they got a picture, a broke corner, on the frame. It's not even wood.
 Weisbaum: Boy you're gonna be the envy of your neighborhood.
 Daly: (Laughs) You betcha. Yeah, you betcha; a sucker born every minute.
 Welcome to the club.
 Daly: Yeah, there you go.
 Weisbaum: Vic was a good sport. One art shop by the way, Edie told me that Vic's painting would fetch about a dollar at a garage sale. Now the company that's sending out these mailings from Canton, Ohio wouldn't talk to me on camera but the firm's attorney wrote me a letter saying the mailings are simple and straightforward and the company is doing nothing wrong, but we've learned the Attorney General's office here in Washington state is currently investigating the company to determine if any laws, against deceptive advertising have been broken.
 Edye: Herb, it's so infuriating. How do you tell a real contest from a phony contest?
 Weisbaum: Two simple rules I live my life by. If it's a legitimate contest, number one, you have to enter and number two, you don't have to pay anything. You don't have to pay shipping or handling costs or any other fees. If it's legit, you can enter for free and it doesn't cost you anything. If they want any money beware.
 Joint App. at 81-88.
 
 
 [3]
 KIRO's motion to dismiss does not set forth an independent basis for its claim but relies upon the legal arguments contained in the motions of CBS and Weisbaum. Plaintiff argues that KIRO did not adopt the second motion to dismiss and therefore KIRO's 12(b)(6) motion lacks any merit. Plaintiff's argument is specious as KIRO's supplemental motion expressly incorporated the second motion to dismiss. See Joint App. at 154
 
 
 [4]
 While the parties have assumed the application of Ohio law to the determination of the agency issue, we conclude that the Ohio courts would apply Washington law. Although we were unable to locate a case in which the Ohio courts have made a choice of law analysis involving an agency issue, the Ohio courts have followed the Restatement approach in both the contract and tort area. See Gries Sports Enter. v. Modell, 473 N.E.2d 807 (Ohio 1984), cert. denied, 473 U.S. 906 (1985); Morgan v. Biro Mfg. Co., 474 N.E.2d 286 (Ohio 1984). Under the Restatement approach we would apply the substantive state law of the state with the most significant relationship to the agency. Because both KIRO and Weisbaum are residents of Washington and the alleged agency relationship derives from employment in Washington, we conclude that Washington law should apply. See Restatement (Second) of Agency Sec. 291
 
 
 [5]
 Although the District Court did not engage in an analysis of choice of law issues, we assume by its use of Ohio law that choice of law principles mandate application of Ohio law
 
 
 [6]
 Section 145 provides:
 (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in Sec. 6.
 (2) Contacts to be taken into account in applying the principles of Sec. 6 to determine the law applicable to an issue include:
 (a) the place where the injury occurred;
 (b) the place where the conduct causing the injury occurred;
 (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
 (d) the place where the relationship, if any, between the parties is centered.
 These contacts are to be evaluated according to their relative importance with respect to that particular issue.
 Section 6 states:
 (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
 (2) When there is no such directive, the factors relevant to the choice of applicable rule of law include
 (a) the needs of the interstate and international systems,
 (b) the relevant policies of the forum,
 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
 (d) the protection of justified expectations,
 (e) the basic policies underlying the particular field of law,
 (f) certainty, predictability and uniformity of result and
 (g) ease in determination and application of the law to be applied.
 
 
 [7]
 The Restatement has also established choice of law rules with regard to particular torts. Under Restatement (Second) of Conflict of Laws Sec. 153, Multistate Invasion of Privacy,
 [t]he rights and liabilities that arise from matter that invades a plaintiff's right of privacy and is contained in any one edition of a book or newspaper, or any one broadcast over radio or television, exhibition of a motion picture, or similar aggregate communication are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in Sec. 6. This will usually be the state where the plaintiff was domiciled at the time if the matter complained of was published in that state.
 According to Restatement (Second) of Conflict of Laws Sec. 153, cmt. e, "[w]hether a corporation has a right of action for a multistate invasion of its right of privacy would presumably be determined by the same law that would have controlled if the case had involved multistate defamation. (see Sec. 150(3)). The existence of any such right of action in a corporation is not clearly established."
 Restatement (Second) of Conflict of Laws Sec. 150(3) states, "[w]hen a corporation, or other legal person, claims that it has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the corporation, or other legal person, had its principal place of business at the time, if the matter complained of was published in that state."