SHEPPARD, APPELLANT, *v.* STEVENSON, APPELLEE, ET AL.

[Cite as Sheppard v. Stevenson, 1 Ohio App. 2d 6.]

(No. 1613—Decided June 10, 1964.)

*Messrs. Bogart, Murray & Sherman* and *Mr. F. Lee Bailey,* for appellant.

*Mr. R. H. Rice,* for appellee.

DOYLE, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Lorain County, in which the legality of the court's action in sustaining a demurrer to a petition charging libel, and the subsequent dismissal of the petition, is challenged by Dr. Stephen Sheppard, the plaintiff.

On February 14, 1963, the Elyria Chronicle-Telegram, a newspaper of general circulation, of which Peter L. Stevenson, a defendant in the trial court and the appellee here, was the managing editor, published the following article, upon which the suit for libel was based.

"Publicity and Tragedy Stalk Sheppard Case
"By Don Miller.

"Publicity, discipline and tragedy continue to stalk the world famous Sheppard murder case.

"While 'Dr. Sam' sits behind prison walls, the import of the July 4, 1954 murder continues.

"July 4, 1954—Marilyn Sheppard battered to death; with her died an unborn child.

"January 7, 1955—Mrs. Ethel Sheppard, Dr. Sam Sheppard's mother, shoots herself to death.

"January 18, 1955—Dr. Richard A. Sheppard, Dr. Sam's father, dies.

"February 13, 1963—Thomas S. Reece, father of the original victim, shoots himself to death.

"Next?

"People can learn to live with sorrow and tragedy for sooner or later it comes to all.

"Yet tragedy and memory shoved into the limelight time and again has, for three persons in the Sheppard murder case, become too great a burden. They, too, became victims.

"Suicide of Marilyn Sheppard's father came in the wake of some more widespread publicity.

"Some have been bitter over news media accounts of Dr. Sam's 'engagement' to a German divorcee; over Sam Sheppard's return to the Ohio Penitentiary from a correctional institution; and over loss of his privileges in connection with the German woman.

"They might be reminded the newspapers, radio and tele-

vision did not violate prison rules, grant television interviews, write front page letters or stir the semi-dormant memories.

"The Sheppards and a German born opportunist did all this.

"The latest series of incidents which culminated in another chapter of tragedy in the sensational murder case revived other memories, too.

"Central figure.

"Sam Sheppard's brother, Dr. Stephen Sheppard, has been the central figure in this great long romance between the prisoner—the murderer—and a mail order woman.

"Steve Sheppard served as go between in letter writing; when it was revealed the two actually were not engaged Steve Sheppard put 'Dr. Sam's' ring on the divorcee's finger; then Steve Sheppard and the divorcee went out on the town for a celebration.

"Steve Sheppard was among the first to appear at the murder scene in 1954. Steve Sheppard hustled his brother into the hospital and fought to keep him secluded.

"When Dr. Sam's trial started, Steve Sheppard buttonholed newsmen in the court corridors. To each he gave a different 'tip.' To each he gave some hints of mysterious doings of mysterious persons.

"Newsmen tried to follow these hints which invariably ran into dead-end.

"Again, again and again the name of Dr. Stephen Sheppard has cropped up.

"The case dims and moves back into the shadows, and all at once Dr. Stephen Sheppard is involved in some action which revives the ugly memories.

"Sam Sheppard took part in some cancer research experiments; Steve Sheppard promptly announced Dr. Sam had contracted cancer as a result. The report was absolutely false.

"But it publicized Sam Sheppard, Stephen Sheppard and a murder of years ago.

"Five lives have been lost. One of those was a life just beginning to stir within its mother's body. Four of the five had died violently.

"The fifth—well, coroners do not write 'heartache' as cause

of death. But to me that was the real cause when Dr. Richard A. Sheppard died.

"Stephen Sheppard has kept alive the sensationalism, adding to it at regular intervals.

"Who will be his next victim?"

The petition not only included the publication set out above, but pleaded the following innuendo:

"That said publications were intended to convey to the community at large the impression that the plaintiff, Dr. Stephen Sheppard [a doctor of osteopathic medicine practicing in the circulating area of the newspaper], was responsible for the wrongful death of five people and that it was calculated to and did hold plaintiff up to public scorn, hatred and ridicule and that by such publication * * * [defendant] meant and intended to mean that plaintiff, Dr. Shephen Sheppard, was responsible for the untimely and wrongful deaths of five people and would continue to wrongfully cause the death of additional people and was so understood by readers of said publication."

It is the law in this state that if a publication is not libelous per se, such publication is not actionable in the absence of pleading and proof of special damages. An action for libel per quod can be maintained only with allegations and proof of special damages. *Cleveland Leader Printing Co.* v. *Nethersole,* 84 Ohio St., 118, Ann. Cas. 1912B, 978. If a publication is libelous per se, special damages need to be neither pleaded nor proved for the maintenance of the action. In the case now under review, it is agreed by all counsel in oral argument and brief that special damages are not pleaded. In the appellant's brief appears this statement:

"It is * * * plaintiff-appellant's contention that the article in and of itself is libelous per se; that no innuendo is needed, and that, therefore, the plaintiff-appellant need not plead special damages."

If, therefore, the article is not libelous per se, the action of the court in sustaining the demurrer and dismissing the petition was not error; to the contrary, if the article is libelous per se, the court erred and the judgment must be reversed, because the question of whether words of a publication are libelous per se or not is for the court and not a jury. *Mauk* v. *Brundage,* 68 Ohio St., 89, 62 L. R. A., 477.

10

It is generally accepted doctrine that words and phrases which are libelous per se carry the presumption of malice, falsity and damages, unless published on a privileged occasion, and that words and phrases which are libelous per se do not need an innuendo; and conversely, that words and phrases which need an innuendo are not libelous per se, but per quod. *Becker* v. *Toulmin, Jr.,* 165 Ohio St., 549; 53 Corpus Juris Secundum, 43, Libel and Slander, Section 8.

The pleader in the case before us plead an innuendo, which of course we must treat as surplusage, as our only question is whether the language of the published article itself constitutes libel per se without the innuendo. The innuendo cannot be used to aver a fact, introduce new matter, or alter, enlarge, extend or restrict the import of the language in the published article, *Becker* v. *Toulmin, supra.*

Pursuant to principles of law established by the courts of Ohio, this court is of the opinion that the published article is not libelous per se; and, since it is conceded that special damages were not pleaded in the petition, it was the duty of the trial court to sustain the demurrer and dismiss the petition. See: *Sweeney* v. *The Beacon Journal Publishing Co.,* 66 Ohio App., 475.

*Judgment affirmed.*

HUNSICKER, P. J., and STEVENS, J., concur.