904 F.2d 707
 17 Media L. Rep. 1962
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Larry LUSBY, Plaintiff-Appellant,
v.
CINCINNATI MONTHLY PUBLISHING CORPORATION d/b/a Cincinnati
Magazine, and Laura Pulfer and Mary McCarty,
Defendants-Appellees
 No. 89-3854.
 United States Court of Appeals, Sixth Circuit.
 June 6, 1990.
 
 Before NATHANIEL R. JONES, KRUPANSKY and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Larry Lusby, appeals the district court's order of summary judgment for defendants in this libel and slander action. We affirm.
 
 I.
 
 2
 This action involves an article published in the November 1987 issue of Cincinnati Magazine entitled "The Six-Time Loser." The article was based in part on the public record of Hamilton County Municipal Court, case No. 87 CRB 16239, as well as on interviews with two of Lusby's former wives, Lusby himself, his secretary and his attorney. The following highlighted excerpts appeared in the article and are illustrative of its content:
 
 
 3
 What Elizabeth Overberg didn't know was that she was about to become Larry Lusby's sixth wife, and that, before it was all over, her career, finances, her health and her emotional stability would have been jeopardized and Larry would be in jail.
 
 
 4
 Alone, each wom[a]n felt that she had been a victim of a manipulative man, a pathological liar. Together, 'it was like finally joining links to form a chain--there was strength.' Liz says, 'after talking to Pat and some of the other women, I realize that these were nice normal people, and they got duped too.'
 
 
 5
 'It's like being legally raped, like letting someone walk away from a rape and going on to the next victim. I don't like being had. I have a fighting instinct.'
 
 
 6
 'I have an idea that she's trying to revenge the death of her son. She wants to be revengeful and is taking it out on me. She's crazy. She was crazy before we got married and did crazy things after we got married. I'd love to have the money she has spent on psychologists.'
 
 
 7
 J.App. at 241 (District Court Opinion) (emphasis added).
 
 
 8
 The article also mentioned that Lusby was sentenced to four days in jail and a $1000 fine in municipal court by a state court judge, for falsification of his marriage license. The article stated that two of Lusby's six former wives had cautioned that "others should be forewarned about the possibility of being victimized and exploited in the manner that they were." Id. at 241-42.
 
 
 9
 On November 16, 1988, Lusby filed this action against Cincinnati Monthly Publishing Corp d/b/a Cincinnati Magazine, ("Cincinnati Magazine"), Laura Pulfer, its publisher, and Mary McCarty, a staff writer, in the United States District Court for the Southern District of Ohio, Judge Arthur Spiegel presiding. Lusby's complaint alleged six counts against Cincinnati Magazine, Pulfer and McCarty: libel; defamation; negligent infliction of emotional distress; intentional infliction of emotional distress; tortious invasion of privacy; and punitive conduct.
 
 
 10
 On December 19, 1988, Cincinnati Magazine, Pulfer and McCarty filed a motion to dismiss, or in the alternative, for summary judgment. On August 11, 1989, the district court granted the summary judgment for the defendants and dismissed the complaint in its entirety.[1]
 
 II.
 
 11
 We review de novo the decision of the district court to grant summary judgment. Celotex v. Catrett, 477 U.S. 317 (1986). Fed.R.Civ.P. 56 provides that a court may enter summary judgment on a claim if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." The non-moving party is required to go beyond the mere pleadings and " 'designate specific facts showing that there is a genuine issue for trial' ". 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)). The moving party "has the burden of showing conclusively that there exists no genuine issue as to a material fact and the evidence together with all the inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.) (emphasis in original), cert. denied, 444 U.S. 986 (1979).
 
 A.
 
 12
 Lusby first argues that the district court erred in determining that appellant's privacy claims are nonactionable because the underlying facts had previously been made part of a public record or consented to by Lusby prior to publication. Lusby claims that the accusations leveled by his former wife in the article with regard to his employment history, venereal disease, and other matters are private, and that he did not consent to publication of the statements he made to McCarty.
 
 
 13
 Lusby insists that he and his secretary spoke to McCarty only to dissuade her from publication. The district court found that:
 
 
 14
 each of the items plaintiff complains about that were made public in the article were already in the public record by the time of publication by reason of his bankruptcy proceedings and his plea, conviction and sentencing for falsification of his marriage license. Furthermore, plaintiff concedes that public accusations of adultery, of transmitting venereal diseases, of swindling Elizabeth Overberg of $60,000, and of the practice of marrying single professional women in order to obtain their money, were made by his former wife before the article was printed by the defendants. An examination of the transcripts and court records filed as attachments to the affidavits confirm that these matters were public before the article was published.
 
 
 15
 J.App. at 244. "[I]n order to state a cause of action for publication of facts concerning his private life, plaintiff must establish that the matter publicized was not left open to the public eye, but rather, was truly a matter of his private concern only." Jackson v. Playboy Enterprises Inc., 574 F.Supp. 10, 13 (S.D.Ohio 1983). Lusby's former wife's accusations do not meet the latter standard because they were levelled publicly prior to publication of the Cincinnati Magazine article. Furthermore, Lusby's interview with McCarty unmistakably constitutes a voluntary statement to the magazine. We therefore agree with the district court that Lusby "should not now be permitted to claim an invasion of privacy where he voluntarily submitted to an interview regarding the subject matter of the article." J.App. at 246, Memorandum and Order. Finally, any information contained in the article that was derived from official court proceedings cannot be the basis for liability, because the First Amendment protects those who accurately report the information released. Cox Broadcasting Corp. v. Cone, 420 U.S. 469 (1975). Therefore, we agree with the district court's conclusion that Lusby's previous divorce litigation, bankruptcy proceeding and conviction for falsifying his marriage license had made all these facts public.
 
 
 16
 Lusby also complains that the use of his photograph by the magazine was an invasion of privacy. To state a cause of action for invasion of privacy, "something more than incidental publication or likeness must be alleged." Jackson, 574 F.Supp. at 13. Thus, the plaintiff must show that the defendant appropriated something of value beyond the value each person places on his own name or likeness. The only complaint Lusby can make is that the use of his wedding photograph with six paper doll brides damages his name and reputation. We therefore hold that Lusby does not state a cause of action for invasion of privacy based on appropriation of name and likeness.
 
 
 17
 Appellant's final argument on this issue is that the Ohio Supreme Court recognized a "false light" theory of recovery in Sustin v. Fee, 69 Ohio St2d 143, 431 N.E.2d 992 (1982), which involved a claim of wrongful intrusion into a person's seclusion. While the court quoted the Restatement of Torts 2d, it did not adopt the four branches of the tort of invasion of privacy. The Ohio Supreme Court, in Housh v. Peth, 165 Ohio St. 35, 133 N.E.2d 340 (1956), recognized the invasion of privacy tort. The court adopted three of the four branches of the tort, but did not recognize the false light branch. In Yeager v. Local Union 20, 6 Ohio St.3d 369, 453 NE2d 666 (1983), decided after Sustin, the Court reaffirmed that it had not recognized the false light theory of recovery in Housh, and found no reason to do so then. This court made the same determination in Angelotta v. American Broadcasting Corp. 820 F.2d 806 (6th Cir.1987). We hold that the district court correctly ruled that the defendants are entitled to summary judgment as a matter of law on this issue.
 
 B.
 
 18
 Lusby's next assignment of error is that the district court wrongly determined that his infliction of emotional distress claims are barred by the one year statute of limitations. The district court found that Lusby cannot maintain a separate cause of action for intentional or negligent infliction of emotional distress where the gravamen of his complaint is defamation. The Ohio Supreme Court has not addressed this issue. However, in Ault v. Hustler Magazine, Inc., 860 F.2d 877, 880 n. 1 (9th Cir.1988), cert. denied, 109 S.Ct. 1532 (1989), the Ninth circuit stated that "[t]here is "no independent cause of action for intentional infliction of emotional distress based upon the very same acts which are insufficient to support an action for defamation". (citing Flynn v. Higham, 149 Cal.App.3d 677, 681, 197 Cal.Rept. 145, 147 (1983). In Lashlee v. Sumner, 570 F.2d 107 (6th Cir.1978), this circuit, applying Kentucky law, found that where all of plaintiff's causes of action, including a cause of action for intentional infliction of emotional distress, were based on an allegedly libelous report, the statute of limitations for libel applies to all the claims in preference to the general statute of limitations. We are convinced by these persuasive authorities that a one-year statute of limitations applies to Lusby's emotional distress claims.
 
 
 19
 Lusby points out that in Morgan v. Hustler Magazine, Inc., 653 F.Supp. 711, 717-718 (N.D.Ohio 1987), the district court held that "[i]f a party wants to bring an action for intentional infliction of emotional distress, it must be cited as a separate independent count in the complaint and not by mere reference to emotional distress in a count such as for libel and/or invasion of privacy." Appellant contends that Ohio recognizes the torts of defamation and intentional infliction of emotional distress as separate torts which must be asserted independently. The statute of limitation for the tort of intentional infliction of emotional distress in Ohio is four years. Lusby, therefore asserts that his distress claims are separate and timely even though the libel claims were not. The district court considered this argument and rejected it stating:
 
 
 20
 Although this is a close question, we are persuaded that the Ohio Supreme Court would apply the one-year statute of limitations period applicable to libel or defamation actions to plaintiff's emotional distress claim. The underlying wrong which the complaint alleges is defamation by publication of a libelous article. It would be unfair to permit plaintiff to recover for the alleged libel under the guise of an action for emotional distress when the Ohio General Assembly has specifically elected to limit the availability of such an action through a brief filing period.
 
 
 21
 J.App. at 248.
 
 
 22
 Appellant's distress claims have their only basis in the article which is based on the same set of facts which support his libel, defamation and privacy claims. The libel and defamation claims were dismissed below as untimely. Because the district court correctly determined that it would be unfair to permit Lusby to recover for his emotional distress claims after the statute of limitations for the libel and defamation claims had run, we find that the court did not err in dismissing the emotional distress claims as non-actionable.
 
 C.
 
 23
 Finally, Lusby asserts that Ohio recognizes an independent tort of punitive conduct which warrants the imposition of punitive damages. He cites no authority for this proposition. The district court concluded that no independent tort of punitive damages exists in Ohio and that the claim for punitive conduct must be dismissed. Since appellant cites to no authority for his claim, we find that the district court properly dismissed this claim.
 
 III.
 
 24
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The district court determined that Lusby's libel and defamation claims were barred by the statute of limitations. Those claims are not a part of this appeal