Janis T. McGEE, et al., Plaintiffs,

v.

SIMON & SCHUSTER, INC.,
et al., Defendants.

No. 00CV782.

United States District Court,
S.D. Ohio,
Eastern Division.

July 30, 2001.

Frank Allen Ray, Ray & Alton, Columbus, OH, for Plaintiffs.

Robert W. Hamilton, Jones, Day, Reavis & Pogue, Columbus, OH, Elizabeth A. McNamara, Matthew A. Leish, Davis Wright Tremaine LLP, New York City, for Defendants.

### OPINION AND ORDER GRANTING DEFENDANTS' JOINT MOTION TO DISMISS

MARBLEY, District Judge.

## I. INTRODUCTION

This matter is before the Court on the Joint Motion To Dismiss of Defendants Simon & Schuster, Inc. ("Simon & Schuster"), Viacom, Inc. ("Viacom") and James B. Stewart ("Stewart"), Plaintiffs' Memorandum Contra Defendants' Joint Motion To Dismiss, and Defendants' Reply Memorandum of Law in Support of Motion To Dismiss. Defendants assert that Plaintiffs have failed to state a cause of action for either defamation or intentional infliction of emotional distress, and thus seek dismissal of Plaintiffs' lawsuit with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the following reasons, the Court **GRANTS** Defendants' Joint Motion To Dismiss.

## II. FACTS

Because this matter is before the Court on Defendants' Joint Motion To Dismiss, the facts are presented in the light most favorable to Plaintiffs.

Plaintiffs Janis T. and William J. McGee ("McGees"), parents of the late Cynthia Ann McGee ("Cindy McGee"), are residents of Beverly Hills, Florida. The McGees resided in Dublin, Ohio, from approximately 1978 to 1985, and in Delaware, Ohio, from approximately 1985 to 1995, when they relocated to Florida. While residents of Dublin, Ohio, Plaintiffs developed a community of friends and neighbors. Plaintiffs maintained this community after moving to Delaware, Ohio and, later, to Florida. In the fall of 1999, Plaintiffs made a trip to Dublin, Ohio. During this trip, Plaintiffs learned that they had been referenced in the book, *Blind Eye: How the Medical Establishment Let a Doctor Get Away with Murder ("Blind Eye ")*.[1]

Defendant Simon & Schuster is a for-profit corporation engaged in the business of publishing a wide variety of books. Simon & Schuster, which has its principal place of business in New York City, is a wholly-owned subsidiary of Defendant Viacom. Viacom is a diversified entertainment and publishing company, also located in New York City. Defendant Stewart is the author of the book, *Blind Eye*, which was published by Simon & Schuster and underlies Plaintiffs' Complaint.

Cindy McGee was born on February 27, 1964. Cindy McGee lived with the McGees in Dublin, Ohio until sometime after 1978, when she left home to attend the University of Illinois on a gymnastics scholarship.

On November 4, 1983, Cindy McGee was struck by an automobile and severely injured. She was hospitalized in Champaign, Illinois, and later transferred to The Ohio State University Medical Center ("OSUMC") in Columbus, Ohio. Cindy McGee died at the OSUMC on January 15, 1984. The Franklin County Coroner's Report lists the official cause of her death as "cardiac arrest and possible pulmonary embolism."

For some time following Cindy McGee's death, there was speculation as to whether her demise had actually been caused by the actions of Dr. Michael J. Swango ("Swango"), a resident physician at the OSUMC when Cindy McGee was treated there. Swango's potential role in numerous suspicious deaths at the OSUMC and other medical facilities has long been the subject of official investigations. On September 24, 2000, a Franklin County (Ohio) Grand Jury indicted Swango for aggravated murder in connection with Cindy McGee's death; on October 18, 2000, Swango pleaded guilty to the aggravated murder of Cindy McGee.[2]

 In 1999, Simon & Schuster published Stewart's book, *Blind Eye*. *Blind Eye* is an exposé of Swango's medical and homicidal careers. As its title suggests, *Blind Eye: How the Medical Establishment Let a Doctor Get Away with Murder* is highly critical of various constituents of the medical establishment. The OSUMC is specifically targeted for criticism of its alleged failure to cooperate with police investigations of Swango. The sole paragraph upon which Plaintiffs base their claims reads as follows:

> Some relatives of possible Swango victims, such as the parents of the young

---

**1.** James B. Stewart, *Blind Eye: How the Medical Establishment Let a Doctor Get Away with Murder* (1999).

**2.** Of these facts, the Court takes judicial notice.

gymnast Cynthia Ann McGee, had quietly accepted monetary settlements from Ohio State. The investigators were angered to learn that as a condition of the settlements, Ohio State had required the families to remain silent, even to police, unless they obtained a subpoena. As [homicide detective Patrick] McSweeney later described the process, "Everyone on the OSU staff was hesitant. Appointments were broken. We made it as convenient as possible. We'd go at two A.M. if that's what they wanted. Not one of them showed up on time. Once we waited three hours for a doctor to show up. They sent some doctors away (out of town) when we wanted them. I got the impression that they thought we were just dumb cops and they were the saviors of mankind. I've dealt with hospitals for years on homicides, and I've never seen anything to compare to the treatment we got at OSU."

Stewart, *Blind Eye* 144–45.[3] Defendants did not receive permission from the McGees to publish the allegedly defamatory paragraph and, in fact, Plaintiffs had not entered into a settlement agreement with the OSUMC.

At the time of publication of *Blind Eye* and all times prior thereto, Plaintiffs were people of good name, fame and repute, and deservedly were held in high esteem by and among their acquaintances, the general public, and specifically their community of friends and neighbors in Dublin, Ohio. Plaintiffs allege that the statement,

> Some relatives of possible Swango victims, such as the parents of the young gymnast Cynthia Ann McGee, had quietly accepted monetary settlements from Ohio State. The investigators were angered to learn that as a condition of the settlements, Ohio State had required the families to remain silent, even to police, [unless they obtained a subpoena.]

has directly and proximately caused injury and/or damage to the good name, fame, reputation and place of esteem of Plaintiffs among acquaintances, the general public, and specifically their community of friends and neighbors within Dublin, Ohio. Plaintiffs further allege that the statement has caused Plaintiffs to suffer severe emotional distress, which has directly and proximately caused Plaintiffs to suffer permanent psychological injury and damage.

On July 11, 2000, Plaintiffs initiated the present lawsuit by filing their Complaint in this Court. Plaintiffs have asserted two causes of action for "defamation and/or libel," the first alleging that Defendants acted negligently and the second alleging that Defendants acted recklessly and with malice, and one cause of action for intentional infliction of severe emotional distress. Plaintiffs are seeking compensatory damages in excess of $75,000, interest, costs, attorneys' fees, punitive damages and any other relief this Court deems just.

## III. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, the district court is limited to evaluating whether the plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983). A complaint should not be dismissed under Rule 12(b)(6) " 'unless it appears beyond doubt that the [p]laintiff

---

**3.** This Court properly may consider the text of *Blind Eye*, a copy of which was attached to Defendants' Joint Motion To Dismiss, without converting Defendants' Joint Motion To Dismiss into a motion for summary judgment because the book is "referred to in the plaintiff[s'] complaint and [is] central to the plaintiff[s'] claim[s]." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir.1999) (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)).

can prove no set of facts in support of his claim which would entitle him to relief.'" *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.1994) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir.1996) (quoting same language). The district court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. While the complaint need not specify every detail of the plaintiff's claim, it must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gazette*, 41 F.3d at 1064. Though liberal, this standard of review requires more than the bare assertion of legal conclusions. *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir.1993). A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory. *Id.*

## IV. ANALYSIS

As a preliminary matter, the Court notes that Ohio law governs this dispute.

### A. Defamation Claims

Plaintiffs here seek recovery under a "defamation and/or libel" theory for Defendants' publication of the following paragraph:

Some relatives of possible Swango victims, such as the parents of the young gymnast Cynthia Ann McGee, had quietly accepted monetary settlements from Ohio State. The investigators were angered to learn that as a condition of the settlements, Ohio State had required the families to remain silent, even to police, unless they obtained a subpoena. As [homicide detective Patrick] McSweeney later described the process, "Everyone on the OSU staff was hesitant. Appointments were broken. We made it as convenient as possible. We'd go at two A.M. if that's what they wanted. Not one of them showed up on time. Once we waited three hours for a doctor to show up. They sent some doctors away (out of town) when we wanted them. I got the impression that they thought we were just dumb cops and they were the saviors of mankind. I've dealt with hospitals for years on homicides, and I've never seen anything to compare to the treatment we got at OSU."

Stewart, *Blind Eye* 144–45.

■ In order to prevail on a defamation claim under Ohio law, a plaintiff must be able to show four elements: "(1) a false and defamatory statement concerning another, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence by the publisher, and (4) either the actionability of the statements regardless of special harm or the existence of special harm caused by the publication." *Jackson v. City of Columbus*, 194 F.3d 737, 757 (6th Cir.1999). With respect to the first element, for a statement to be libelous under Ohio law it must be "a false written publication, made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession." *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 651 N.E.2d 1283, 1289 (1995).

Whether a statement is defamatory within the contemplation of this first prong is a question of law for the court to decide. *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666, 669 (1983) (holding that "it is for the court to decide as a matter of law whether certain statements

alleged to be defamatory are actionable or not."); *Early v. Toledo Blade*, 130 Ohio App.3d 302, 720 N.E.2d 107, 120 (1998) (noting that the "court must decide as a matter of law whether a statement is defamatory"); *Stow v. Coville*, 96 Ohio App.3d 70, 644 N.E.2d 673, 676 (1994) (noting that "[i]t is a question of law whether a statement is capable of carrying a defamatory meaning.").

In this case, the allegedly libelous statement complained of is that Plaintiffs "quietly accepted [a] monetary settlement" to terminate their disputed legal claim with The Ohio State University. While settling a contested legal claim is obviously a wholly proper activity, neither illegal nor unethical, *see Bollenbacher v. Soc'y for Sav. in City of Cleveland*, 148 Ohio St. 649, 76 N.E.2d 866, 868 (1947) (holding that where a charge of slander was based on "the statement that the plaintiff was ignoring the rights of her brothers and sisters and endeavoring wrongfully to prejudice them by asking the defendant to make a separate settlement of the judgment against her and her brothers and sisters,"

the allegedly wrongful utterance was "in effect simply that she was availing herself of her rights under the law, which, of course, cannot be construed as a˙ slanderous statement."), the thrust of the statement at issue here arguably is that the McGees chose hush money over the investigation of their daughter's death. The Court has little doubt that, thus understood, such a statement "reflect[s] injuriously on a person's reputation, exposing [that] person to public hatred, contempt, ridicule, shame or disgrace...." *A & B–Abell Elevator*, 651 N.E.2d at 1289.[4] As the Court must, in the context of Defendants' Joint Motion To Dismiss, accept as true Plaintiffs' allegation that they never entered into any such settlement with Ohio State, the McGees have satisfied the first element required to state a claim for defamation.

Defendants do not contest Plaintiffs' assertion that the publication of the offending statement was unprivileged, and thus the second prong is also satisfied. Likewise, the Court finds Plaintiffs' averment that the veracity of the allegedly libelous

4. Defendants would have this Court apply the innocent construction rule and find that the complained-of statement cannot be viewed as defamatory in light thereof. As the Sixth Circuit has noted in an unpublished opinion, Ohio's innocent construction rule requires "that a statement reasonably susceptible to both a defamatory and an innocent meaning must be construed, as a matter of law, to have an innocent meaning." *New Olde Village Jewelers, Inc. v. Outlet Communications, Inc.*, No. 98–4407, 2000 WL 64942, at *4 (6th Cir. Jan.14, 2000); *see also Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666, 669 (holding that "if allegedly defamatory words are susceptible to two meanings, one defamatory and one innocent, the defamatory meaning should be rejected, and the innocent meaning adopted."). Here, Defendants argue that because the statement at issue could be read as critical of Ohio State and value-neutral toward the McGees, this Court must find it "innocent" as a matter of law. By attempt-

ing to draw the Court's focus away from the import of the statement *vis-à-vis the McGees*, Defendants seek improperly to broaden the scope of the innocent construction rule to the point where it would eviscerate the cause of action for libel *per quod*.

In order for Ohio's innocent construction rule to provide cover for Defendants, the statement must be reasonably susceptible either (1) to a reading that does not implicate the McGees at all, or (2) to a reading that could not possibly be defamatory. In this case, there can be no doubt whom "the parents of the young gymnast Cynthia Ann McGee" are, and there is no way to read the statement such that it does not assert that the McGees entered into a settlement agreement, which included a confidentiality clause, with Ohio State. This is, of course, the state of affairs where this footnote began: the innocent construction rule does nothing to advance Defendants' cause in this case.

statement was not checked with the McGees prior to publication adequately to allege negligence, and thus satisfy prong three with respect to Plaintiffs' negligence-based claim.

■ The prong three analysis with respect to Plaintiffs' *second* cause of action for defamation and/or libel, which seeks recompense for the malicious and/or reckless defamatory conduct of Defendants, is significantly different: in the absence of an allegation that Defendants failed to check the veracity of the information with any presumably knowledgeable party—there could be many here: Ohio State, the investigating officers, etc.—the Court finds that Plaintiffs have failed to plead facts sufficient to show malice or recklessness on behalf of Defendants.[5] Plaintiffs' cause of action for defamation and/or libel based on malicious and/or reckless conduct is therefore **DISMISSED,** and the analysis that follows is applicable only to Plaintiffs' negligence-based claim.

■ Prong four, that the statement either be actionable regardless of special harm or that there exist "special harm caused by the publication," *Jackson,* 194 F.3d at 757, leads the Court to an examination of the distinction between libel *per se* and libel *per quod.* For a statement to constitute libel *per se,* it must be "defamatory on its face and by the very meaning of the words...." *Fenley v. Bowman,* No. CA98–02–013, 1998 WL 526516, at *2 (Ohio Ct.App. Aug. 24, 1998) (citing *McCartney v. Oblates of St. Francis de-Sales,* 80 Ohio App.3d 345, 609 N.E.2d 216, 222 (1992) (explaining that "[s]lander *per se* means that the slander is accomplished by the very words spoken.")). In order for a remark to be considered defamatory *per se,* "it must consist of words which import an indictable criminal offense involving moral turpitude or infamous punishment, impute[ ] some loathsome or contagious disease which excludes one from society[,] or tend[ ] to injure one in his trade or occupation." *McCartney,* 609 N.E.2d at 222. Defamation *per quod,* on the other hand, is defined as defamation "determined by the interpretation of the listener, through innuendo...." *Id.* In Ohio, "if a publication is not libelous *per se,* such publication is not actionable in the absence of pleading and proof of special damages. An action for libel *per quod* can be maintained only with allegations and proof of special damages." *Sheppard v. Stevenson,* 1 Ohio App.2d 6, 203 N.E.2d 507, 509 (1964) (citing *Cleveland Leader Printing Co. v. Nethersole,* 84 Ohio St. 118, 95 N.E. 735 (1911)).

In the matter *sub judice,* the complained-of words, on their face, spell out only an allegation that the McGees settled

5. Under Ohio law, "[t]he term 'malice' is defined as the 'willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified.' " *Hicks v. Leffler,* 119 Ohio App.3d 424, 695 N.E.2d 777, 780 (1997) (quoting *Jackson v. Butler Cty. Bd. of Cty. Commrs.,* 76 Ohio App.3d 448, 602 N.E.2d 363, 367 (1991)). In the context of a claim for defamation, the Ohio Supreme Court has defined the term "actual malice" as a publication made " 'with knowledge that it was false or with reckless disregard of whether it was false or not.' " *Varanese v. Gall,* 35 Ohio St.3d 78, 518 N.E.2d 1177, 1180 (1988) (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). The Ohio Revised Code provides the following definition of reckless behavior:

> A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

OHIO REV.CODE § 2901.22(C).

their disputed legal claim with Ohio State, and that the settlement agreement contained a confidentiality clause. Hardly a charge of criminal activity, loathsome disease, or professional malfeasance, this statement does not amount to libel *per se*. *See McCartney*, 609 N.E.2d at 222. It is only through "the interpretation of the [reader], through innuendo," *id.*, that the remark can adopt its defamatory implication. Thus, the publication is at worst libelous *per quod. See id.*

■ In order to state a claim for libel *per quod* in Ohio, the plaintiff must allege special damages. *Sheppard*, 203 N.E.2d at 509. Special damages are damages *beyond* a stained reputation; they are "those direct financial losses resulting from the plaintiff's impaired reputation." *Hampton v. Dispatch Printing Co.*, No. 87AP–1084, 1988 WL 96227, at *2 (Ohio Ct.App. Sept. 13, 1988) (citing *Moore v. P.W. Publ'g Co.*, 3 Ohio St.2d 183, 209 N.E.2d 412 (1965); *Bigelow v. Brumley*, 138 Ohio St. 574, 37 N.E.2d 584 (1941)). Special damages are not pled sufficiently where the plaintiff's allegations " 'do not show any loss or injury actually suffered as a direct consequence of an impaired reputation.' " *Elec. Furnace Corp. v. Deering Milliken Research Corp.*, 383 F.2d 352, 356 (6th Cir.1967) (quoting *Bigelow*, 37 N.E.2d at 594). Nor may a jury "lawfully compensate the plaintiff for pain, mental anxiety, or general loss of reputation, in cases where the words are not actionable themselves, but must confine the assessment to the actual pecuniary loss strictly as alleged and proved." *Id.* (quotation omitted); *see also Penn v. Rockwell Int'l Corp.*, Nos. C–2–86–992, C–2–87–98, 1988 WL 149613, at *9 (S.D.Ohio Oct.18, 1988) (noting that "emotional distress and mental anguish [are not special damages as] contemplated by Ohio law.").

■ Here, Plaintiffs allege:

The false written statements published within *Blind Eye* have directly and proximately caused injury and/or damage to Plaintiffs' good name, fame and repute, and place of esteem among acquaintances, the general public, and specifically their community of friends and neighbors within Dublin, Franklin County, Ohio.

In conjunction with their intentional infliction of emotional distress claim, Plaintiffs further allege: "As a direct and proximate result of their severe emotional distress, Plaintiffs have suffered permanent psychological injury and damage." Plaintiffs, however, make no mention of an actual pecuniary loss. Thus, though Plaintiffs have alleged damaged reputations and psyches, they have clearly failed to plead special damages and have therefore failed to state a claim for libel *per quod.*

Accordingly, Defendants' Joint Motion To Dismiss is **GRANTED** with respect to Plaintiffs' defamation claims.

## B. Intentional Infliction of Emotional Distress Claim

■ Where, as here, the claim for intentional infliction of emotional distress arises out of the same facts as a defamation claim, and is therefore entirely derivative of the defamation claim, the emotional distress claim cannot survive the dismissal of the underlying cause of action. *See Lusby v. Cincinnati Monthly Publ'g Corp.*, No. 89–3854, 1990 WL 75242, at *3 (6th Cir.1990) (proceeding under Ohio law and finding persuasive the Ninth Circuit rule that "[t]here is no independent cause of action for intentional infliction of emotional distress based upon the very same acts which are insufficient to support an action for defamation.") (quoting *Ault v. Hustler Magazine, Inc.*, 860 F.2d 877, 880 n. 1 (9th Cir.1988)); *see also Vail v. Plain Dealer Publ'g Co.*, 72 Ohio St.3d 279, 649 N.E.2d 182, 186 (1995) (holding that alleg-

edly defamatory statements were protected opinion, and concluding that since "the statements at issue are constitutionally protected speech, [the plaintiff's] claims for intentional infliction of emotional distress must also fail."). The Court, therefore, **DISMISSES** Plaintiffs' claim for intentional infliction of emotional distress.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Joint Motion To Dismiss.

**IT IS SO ORDERED.**