**Karen Ruzek BOLTON, Plaintiff,**

v.

**DELTA AIR LINES, et al., Defendants.**

**Case No. 2:15-cv-965**

United States District Court,
S.D. Ohio, Eastern Division.

Filed 03/24/2016

Dianne Dinapoli Einstein, Einstein & Poling, LLC, Dublin, OH, Mary Elizabeth Lewis, Einstein Law, LLC, Westerville, OH, for Plaintiff.

David Thomson Croall, Porter, Wright, Morris & Arthur, Cincinnati, OH, for Defendants.

## OPINION AND ORDER

MICHAEL H. WATSON, UNITED STATES DISTRICT JUDGE

Delta Air Lines, Inc. ("Delta") and Michele D. Parker ("Parker") (collectively "Defendants") seek the dismissal of Karen Ruzek Bolton's ("Plaintiff") complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(3) or, in the alternative, a change of venue under 28 U.S.C. §§ 1404, 1406. Mot., ECF No. 3. For the following reasons, the Court **GRANTS** Defendants' motion on the ground that Plaintiff fails to state a claim.

## I. FACTS

The following facts are taken from Plaintiff's Complaint, ECF No. 1.

Plaintiff, a resident of New Albany, Ohio, brings a defamation action under Ohio law against Defendants in this diversity case.

Parker is a Managing Director of Human Resources for Delta, an airline. Compl. ¶ 4, ECF No. 1.

Plaintiff is and has been employed as a Delta flight attendant since November 6, 1986. *Id.* ¶¶ 2, 12. Plaintiff is "charter qualified" and has worked both charter and non-charter flights. *Id.* ¶ 13. Plaintiff was personally chosen by the Philadelphia Phillies Director of Team Travel and Clubhouse Services, Frank Coppenbarger, to serve as a flight attendant, and later selected as a primary flight attendant, on Philadelphia Phillies ("Phillies") charter flights. *Id.* ¶¶ 16–17. The Phillies selected Plaintiff to be a flight attendant on Phillies charters in 2010 and as an alternate in 2011, 2012, and 2013. *Id.* ¶¶ 17, 79. Throughout her time with Delta, Plaintiff has accumulated seventy documented positive comments and zero negative comments from customers and/or co-workers. *Id.* ¶ 15.

During various Phillies charter flights in 2010, Plaintiff witnessed several policy and safety violations by another co-worker, flight attendant Bryan Morris ("Morris"). *Id.* ¶ 18. During a meeting, Plaintiff reported the violations to the Delta Field Service Manager and Phillies point-of-contact Lantz Brown. *Id.* ¶ 22. As a result of these incidents, Plaintiff chose to hold an "alternate" charter Flight Attendant position for the charter flights during the subsequent Phillies seasons of 2011, 2012, and 2013. *Id.* ¶ 40. Between 2012 and 2013, Plaintiff took a leave of absence to care for her mother. *Id.* ¶ 42.

Beginning in 2013, Plaintiff made plans to return to work. Around that same time, Plaintiff became aware of false accusations and complaints against her by Morris, Susie Sisk ("Sisk"), and Fred Jones ("Jones"), at which point she tried to contact Lantz Brown, as well as other leaders with Delta, to obtain more information about the comments. *Id.* ¶¶ 45–50. Sick and Jones are Morris' Delta colleagues. *Id.* ¶ 56.

Plaintiff claims that, as a result of her inquiries into the matter, Plaintiff was harassed by Morris, Sick, and Jones. Plaintiff believes the false statements and harassment by Morris, Sick, and Jones was retaliation for reporting the 2010 incidents of Morris. *Id.* ¶¶ 51-58. Shortly thereafter, Plaintiff went on short-term disability

leave due to the stress caused by her former co-workers. *Id.* ¶ 60.

Shortly thereafter, Plaintiff wrote letters to several senior Delta leaders including but not limited to CEO Richard Anderson ("Anderson") about how Delta was not protecting the public by failing to investigate and take action to resolve the safety violations by Delta employees. *Id.* ¶ 69. Plaintiff did not receive a response directly from any of Delta's leaders; rather, Plaintiff alleges Anderson instructed Parker to write a letter to Plaintiff. *Id.* ¶¶ 70-71.

On March 20, 2014, Parker mailed a letter, on behalf of Anderson, to Plaintiff and other "third parties" containing allegedly false and defamatory statements about Plaintiff. *Id.* ¶ 72. Specifically, in the letter to Plaintiff, Parker stated that the Phillies asked for Plaintiff to be removed from the charter flights in 2013 for her "negative attitude" during the 2010 season. *Id.* ¶ 73. Plaintiff contends that she had no knowledge of the alleged removal request from the charter flight either from anyone at Delta or by anyone with the Phillies. *Id.* ¶¶ 75-77.

Plaintiff claims the statements contained in the March 20, 2014 letter about her have caused substantial damage to her reputation. *Id.* ¶ 83.

Plaintiff filed suit in the United States District Court for the Southern District of Ohio and alleges in a single-count Complaint that, as a result of the letter sent on March 20, 2014, Defendants defamed her. As explained in greater detail below, the Court finds that Plaintiff has failed to state a claim for defamation. The Court, therefore, need not address Defendants' improper venue argument.

## II. STANDARD OF REVIEW

A claim survives a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted).

When considering a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 619 (6th Cir. 2002). In doing so, however, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955; *see also Iqbal,* 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545, 548 (6th Cir. 2007). "[A] naked assertion . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility . . . ." *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955. Thus, "something beyond the mere possibility of [relief] must be alleged . . . ." *Id.* at 557-58, 127 S.Ct. 1955 (internal citations omitted).

## III. ANALYSIS

"Defamation is defined as false publication which injured a person's reputation." *Dale v. Ohio Civil Serv. Emps. Ass'n,* 57 Ohio St.3d 112, 117, 567 N.E.2d 253 (1991). A cause of action for defama-

tion consists of the following five elements: (1) a false and defamatory statement; (2) about the plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) the statement was defamatory per se or caused special harm to the plaintiff. *Gosden v. Louis*, 116 Ohio App.3d 195, 206–07, 687 N.E.2d 481 (9th Dist. Ct. App. Dec. 4, 1996). Unlike fraud or mistake, defamation is not subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Suarez Corp. v. CBS, Inc.*, No. 93–3307, 1994 WL 142785, at *5 (6th Cir. April 19, 1994).

▮ "Even a false statement may be protected by a qualified privilege, which applies in certain contexts where a statement was made without actual malice." *Blesedell v. Chillicothe Tel. Co.*, 811 F.3d 211, 224 (6th Cir. 2016) (citing *Jackson v. Columbus*, 117 Ohio St.3d 328, 883 N.E.2d 1060, 1064 (Ohio 2008)). "Actual malice requires knowledge of falsity or a reckless disregard of falsity." *Id.* at 226 (citing *Jackson*, 883 N.E.2d at 1064).

Plaintiff alleges that Parker's letter contained the following false and defamatory statements:

> We have in fact confirmed that the Phillies' management specifically requested that Delta remove you from their charter, citing your negative attitude during the 2010 charter season as the basis for their decision. We further understand that the letter provided by Greg Casterioto, Director of Baseball Communications with the Phillies was provided to you at your request as a general letter of reference. And while that letter may reflect Mr. Casterioto's opinions, it does not reflect the views of the Phillies management responsible for charter operations.

Compl. Ex. 1, 2, ECF No. 1-1 (carbon copied to Mike Campbell, Joanne Smith, and Sheandra Clark). Defendants contest that the letter contained any false statements, and they additionally argue that, assuming arguendo the statements above are false, Plaintiff failed to allege with sufficient specificity that the letter was published without privilege to a third party. Thus, Defendants argue Plaintiff fails to state the third element of a defamation claim.

Defendants argue that the March 20, 2014, letter qualifies as a privileged communication because the "three 'third parties' [to whom the letter was sent] ... were ... all employees of Delta, including the Company's senior human resources executive, the executive responsible for the In-Flight Service area in which Plaintiff worked; and one of Delta's in-house employment attorneys." Mot. 3, ECF No. 3.

The majority of Plaintiff's response argues that the statements in the letter were false. As the Court assumes arguendo the falsity of the statements for purposes of Defendant's motion, those arguments are irrelevant. Plaintiff then contends, in two sentences, that she alleged the communication was not privileged and that it was made intentionally, maliciously, and with reckless disregard. Resp. 5–6, ECF No. 4. A review of the allegations Plaintiff cites, however, shows that they are not sufficient factual allegations to overcome Defendant's defense of qualified privilege.

The Court first turns to Plaintiff's allegation that the letter was sent to third parties. Compl. ¶ 92, ECF No. 1. In her response to Defendant's motion, Plaintiff does not articulate where in her Complaint she alleges that the letter was sent to anyone other than the three individuals that were carbon copied. Indeed, her Complaint is scant with any *factual* allegations that the e-mail was sent to anyone other than the individuals listed on the final page of the letter (the three Delta employees). While she does allege that the defamatory

statements were unprivileged publications to third parties, *see* Compl. ¶ 92, ECF No. 1, read broadly, Plaintiff's allegation can only plausibly be read to refer to the three individuals who were carbon copied on the letter (attached to the Complaint). *Id.*

Plaintiff argues that because she was on leave and in Ohio, she was not in a position to have "specific information" about whether the letter was published to anyone other than the three individuals carbon copied on the original letter. *Id.* at 6. Plaintiff claims that, through discovery, she will be able to ascertain if the letter was copied, circulated, or shared with anyone else. *Id.* However, Plaintiff is not entitled to engage in a fishing expedition. *See Anderson v. Boston Scientific Corp.*, No. 1:12–CV–762, 2013 WL 632379, at *3 (Feb. 20, 2013) ("[D]iscovery cannot be used as a fishing expedition . . . ."). Accordingly, the Court finds there are no facts to support an allegation—to the extent Plaintiff even makes one—that the letter was sent to anyone other than the three individuals carbon copied on it.

■ The Court thus next considers whether the publication of the letter to the three individuals carbon copied on it is entitled to qualified privilege. The Supreme Court of Ohio has explained the privilege as follows: "A publication is privileged when it is 'fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned.'" *Mangelluzzi v. Morley*, 40 N.E.3d 588, 597 (8th Dist. Ct. App. 2015) (citing *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7, 651 N.E.2d 1283 (1995)). "The essential elements to establish the privilege are 'good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties

only.'" *Id.* (citing *Hahn v. Kotten*, 43 Ohio St.2d 237, 246, 331 N.E.2d 713 (1975)). The Court finds that Plaintiff has failed to allege sufficient facts to withstand Defendants' challenge to her pleading.

■ As to the individuals that Parker carbon copied, Defendants provide the following in support of its argument that they constitute "proper parties." Defendants argue that "Campbell, as the senior human resources executive for Delta, . . . had an interest in knowing how and whether the concerns of a Delta In-Flight Service employee were being responded to appropriately." Mot. 8, ECF No. 3. Defendants—similar to their argument as to Campbell—claim that Smith, as one of the executives to whom Plaintiff complained, "had an interest in being assured that the concerns expressed to her were dealt with appropriately and in a timely manner." *Id.* Defendants submit that Clark had been providing legal support relating to the concerns raised by Plaintiff and "had an obvious interest in being fully apprised of communications being made to Plaintiff." *Id.* Plaintiff did not respond to these arguments.

The Court finds Defendants' arguments well taken. The three individuals are associated with Delta, and each person has reason to be carbon copied on a letter to Plaintiff, an employee of Delta. Campbell was Parker's supervisor, Plaintiff had previously complained directly to Smith, *see* Compl. ¶¶ 54, 69, ECF No. 1, and Clark is a member of Delta's legal counsel, with whom Plaintiff's attorney had been in contact. *See* Ex. 1, 5–6, ECF No. 1-1 (a contact that Plaintiff does not contest). As such, the Court finds the letter was a matter of common interest to the three individuals, and the three individuals are "proper parties." *See Vitale v. Modern Tool & Die Co.*, No. 76247, 2000 WL 804671, at *4 (8th Dist. Ct. App. June 22,

2000) ("A communication made in good faith on a matter of common interest between two employees concerning a third employee, is protected by qualified privilege. The statement must be limited in scope to the common purpose, and made to proper parties only." (citations omitted)).

Having found the three individuals carbon copied on the letter are proper parties, the Court considers the remaining elements of a qualified privilege defense. Plaintiff does not allege that Parker made the statement in bad faith nor does Plaintiff allege that Parker does not have an interest to be upheld. Plaintiff also does not allege that the statement is not limited in scope, that this was not a proper occasion, or that the publication was not in a proper manner. Accordingly, the publication is privileged unless it was made with actual malice.

Actual malice necessary to prevent a finding of qualified privilege means the false statements were made with either knowledge that the statement was false or with reckless disregard to its falsity. *See also Vitale*, 2000 WL 804671, at *4 (To find "reckless disregard" Plaintiff must show that Parker was "highly aware of the probability of falsity.").

█ While Plaintiff has sufficiently alleged that the statement is false, "[a]ctual malice cannot be implied from the character and content of the publication" alone. *A&B–Abell Elevator Co.*, 73 Ohio St.3d at 13, 651 N.E.2d 1283 (citing *Jacobs v. Frank*, 60 Ohio St.3d 111, 118–19, 573 N.E.2d 609 (1991)) (internal quotation marks omitted). Rather, Plaintiff must allege facts to support an inference of actual malice. Plaintiff alleges that "Defendants made these false statements with the knowledge that the statements were false and/or with reckless disregard for the truth or falsity of such statements." Compl. ¶ 86, ECF No. 1; *see also id.* ¶ 85 ("Defendants intentionally and maliciously

made [the statement] ...."). Paragraphs 85 and 86 are pure legal conclusions, however, and Plaintiff fails to provide any factual basis in her Complaint to support the conclusions. For example, Plaintiff does not allege facts from which one could infer Parker had any awareness of the probable falsity of the statement or that she entertained serious doubts about the veracity of the statement. *See also McGee v. Simon & Schuster, Inc.*, 154 F.Supp.2d 1308, 1314 (S.D. Ohio 2001) ("[I]n the absence of an allegation that Defendants failed to check the veracity of the information with any presumably knowledgeable party ... the Court finds that Plaintiffs have failed to show malice or recklessness."). The allegations that the Phillies never told *Plaintiff* that they wanted her removed, that Plaintiff never received a negative performance review, or that there was nothing in Plaintiff's personnel file about her having a negative attitude do not permit one to infer that Parker knew the statement in the letter was false. As Plaintiff has not sufficiently alleged that Parker made the statement with actual malice, Defendants' defense of qualified privilege prevails and Plaintiff fails to state a claim for defamation.

## IV. CONCLUSION

In sum, the Court **GRANTS** Defendants' motion to dismiss, ECF No. 3, and **DISMISSES** this case **WITHOUT PREJUDICE.** The Clerk shall terminate this case and remove ECF No. 3 from the Civil Justice Reform Act Motions Report.

**IT IS SO ORDERED.**